**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Civil Action No.:**

AML SOFTWARE, INC., an Illinois corporation,

                Plaintiff,

v.

ATHENA BITCOIN, INC., d/b/a ATHENA BITCOIN GLOBAL, a Delaware corporation, TAPROOT ACQUISITION ENTERPRISES, LLC, a Delaware limited liability company, PSBC, LLC, a Delaware limited liability company, and JORDAN MIRCH, an individual,

                Defendants.
_____/

**COMPLAINT**

Plaintiff, AML SOFTWARE, INC. ("AML" or "Plaintiff"), by and through undersigned counsel, sues Defendants, ATHENA BITCOIN, INC. d/b/a ATHENA BITCOIN GLOBAL ("Athena"), TAPROOT ACQUISITION ENTERPRISES, LLC ("Taproot"), PSBC, LLC ("PSBC"), and JORDAN MIRCH ("Mirch") (collectively "Defendants"), and allege:

**Nature of Action**

1. This lawsuit arises out of Defendants' theft of AML's valuable and proprietary computer source code used on Bitcoin ATMs. Specifically, Defendants engaged in a fraudulent scheme to overtake and misappropriate nearly 3,000 physical Bitcoin ATMs from a third party, SandP Solutions, LLC ("S&P"), along with AML's computer code installed on those hijacked physical ATMs.

1

2. AML owns and holds copyrights in and to its computer code, portions of which are protected trade secrets. By misappropriating AML's code, Defendants have committed copyright infringement, misappropriation of trade secrets and a number of other unlawful acts. AML seeks injunctive relief, as well as damages resulting from Defendants' unlawful conduct.

### The Parties

3. Plaintiff, AML, is an Illinois limited liability company with its principal place of business in Illinois.

4. Defendant, Athena, is a Delaware corporation with its principal place of business in Miami-Dade County, Florida.

5. Defendant, Taproot, is a Delaware limited liability company with its principal place of business in Miami-Dade County, Florida.

6. Defendant, PSBC, is a Delaware limited liability company with its principal place of business in Miami-Dade County, Florida. Taproot and PSBC are related entities (Taproot and PSBC are collectively referred to herein as the "Taproot Entities").

7. Defendant, Mirch, is an individual who, upon information and belief, resides in and/or is domiciled in Miami-Dade County, Florida. Mirch is the Chief Executive Officer and/or managing member of both Taproot and PSBC, and he supervises and controls their activities, including their unauthorized use and access, and infringement, of the copyrighted source code at issue in this case. Mirch also induced, caused, encouraged, facilitated, and is the motivating force behind the infringing activity set forth herein. He also has a financial interest in and actually participated in the infringing activity.

**Jurisdiction and Venue**

8. This is an action for copyright infringement under the U.S. Copyright Act of 1976, misappropriation of trade secrets, and for other related claims and causes of action.

9. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338 because this action arises, at least in part, from Defendants' acts of copyright infringement.

10. The state law claims asserted herein are so related to those over which this Court has original jurisdiction as to form part of the same case or controversy. Therefore, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over those claims.

11. This Court has personal jurisdiction over Athena, Taproot and PSBC under Fla. Stat. § 48.193(1)(a)(1) and (2) because their principal places of business are in, they operate, conduct, engage in, and carry on business in, and they committed a tortious act within, Florida, including within this judicial district. Among other things, Athena, Taproot and PSBC are using, selling and/or distributing copyright-infringing software at issue in this case within Florida, including within this District, and are causing injury to Plaintiff in Florida. This Court also has general personal jurisdiction over Athena, Taproot and PSBC under § 48.193(2) because they are engaged in substantial and not isolated activities in this State. For the same reasons, this Court's exercise of personal jurisdiction over Athena, Taproot and PSBC is consistent with the Constitution of the United States.

12. This Court has personal jurisdiction over Mirch under Fla. Stat. § 48.193(1)(a) (1) because he resides and/or is domiciled in, operates, conducts, engages in, and carries on business in, and has supervised the acts of unauthorized use, unauthorized access, and infringement committed by the Taproot Entities at issue in this case in Florida. Mirch also committed a tortious

3

act within Florida under § 48.193(1)(a)(2), including within this judicial district, and caused injury to persons within Florida. Thus, this Court's exercise of personal jurisdiction over Mirch is also consistent with the Constitution of the United States.

13. Venue is proper in the U.S. District Court for the Southern District of Florida pursuant to at least 28 U.S.C. §§ 1391.

## General Allegations

A. **Plaintiff's Copyrighted Software Code.**

14. AML develops and owns proprietary computer source code for use on Bitcoin ATMs (the "Source Code" or "AML's Copyrighted Source Code"). Particularly in the world of Bitcoin, the Source Code comprises the "guts" of Bitcoin ATMs.

15. AML and its predecessor in interest, S&P, have been using AML's Copyrighted Source Code installed on Bitcoin ATMs for several years.

16. Beginning in or around 2019, S&P contracted with a company called SilverLogic LLC ("SilverLogic") to create initial computer code for S&P's use. The Master Services Agreement between SilverLogic and S&P provided that S&P owned the computer code and all intellectual property associated with the computer code, including copyrights in the code.

17. The initial Source Code was completed in or about 2020, after which S&P began using it in connection with its ATMs.

18. At the time of its initial use of the Code, S&P owned and/or operated approximately 400 Bitcoin ATMs, which eventually increased to approximately 2,800 Bitcoin ATMs.

19. On or about March 10, 2021, S&P entered into a "Software Transfer Agreement" with AML transferring all rights, title and interest in the Source Code to AML, including all

4

copyrights and other intellectual property associated therewith, and the intent was for AML to maintain and continue to develop the computer code.

20. AML licensed back to S&P the right to use the Source Code on the S&P Bitcoin ATM machines.[1]

21. After obtaining ownership, AML updated and continued to develop the Source Code.

22. On September 9, 2025, AML was issued U.S. Copyright Registration TXu 2-507-802 ("'802 Registration") titled "AML Software Code." AML is the owner and holder of the '802 Registration and owns all rights, title, and interest in and to AML's Copyrighted Source Code. A true and correct copy of the '802 Registration is attached as **Exhibit "A."**

23. Portions of AML's Copyrighted Source Code are trade secrets. AML has taken measures to keep them confidential, and they are not readily ascertainable by others. AML has not disclosed the Source Code to any third parties, and the only individuals with knowledge of the trade secrets portions are AML's code developers, all of whom signed confidentiality agreements.

**B.     Defendants' Misappropriation of AML's Copyrighted Source Code.**

24. Starting in or about 2023, Defendants engaged in a scheme to defraud AML by misappropriating AML's valuable Source Code, which was all part of a larger scheme to cripple AML and S&P and take all of their valuable assets worth tens of millions of dollars.

25. Specifically, in early March 2023, S&P and several of its principals were investigated and criminally charged with, among other things, operating Bitcoin ATMs in Northwest Ohio without the requisite licensure.

---

[1] A copy of the Software Transfer Agreement and License Agreement are not being filed with this Complaint due to confidentiality provisions in those agreements, but they are available for future filing under seal.

26. Although the vast majority of the transactions that occurred at these Ohio ATMs were legitimate, and investigators do not contend that S&P was involved in any scam transactions, unrelated third-parties allegedly utilized S&P's ATMs in furtherance of various fraudulent schemes, which de facto implicated S&P. As a result of the charges against it, S&P was prohibited from continuing to operate its inventory of Bitcoin ATMs in Ohio and was left without the resources to continue operations nationwide.

27. This left S&P in a vulnerable position, and Defendants used that opportunity to misappropriate its and AML's assets.

28. Among other things, through fraudulent misrepresentations to S&P and other unlawful conduct, Defendants Taproot and Mirch managed to overtake all of S&P's 2,800 physical Bitcoin ATMs. This theft of the physical machines is the subject of a separate lawsuit in Cook County, Illinois.

29. In addition to taking all of the physical ATM machines, Defendants also used S&P's vulnerable position to misappropriate AML's Copyrighted Source Code.

30. Specifically, in or about August 2023, a few months after the indictment in March 2023, a representative for Athena contacted AML about potentially purchasing AML's Source Code. AML sent Athena an information packet and other documents and information regarding the capabilities of AML's software platform. However, Athena elected not to proceed because, unbeknownst to AML, Athena planned to acquire AML's Source Code through improper means rather than purchasing it from AML for fair market value.

31. Subsequently, in 2024, Mirch, through his Taproot Entities, began communicating with one of AML's computer code developers, Ryan Pineo ("Pineo"), about AML's Source Code, all with the intention of misappropriating it from AML.

32. In or about June 2024, Defendant PSBC entered into an agreement with a company owned by Pineo (Bitom Labs Inc.) by which Pineo agreed to provide computer software "consulting" services to PSBC.

33. Pineo did not have an exclusive developer relationship with AML, so his willingness to consult with PSBC was not improper.

34. However, unbeknownst to AML, Mirch and the Taproot Entities' goal in hiring Pineo as a consultant was not to develop new code for the Taproot Entities but rather to wrongfully acquire AML's Copyrighted Source Code.

35. Separately, Mirch and the Taproot Entities set up a side deal with Defendant Athena to transfer both the physical Bitcoin ATM machines to Athena (the ones that were stolen from S&P), as well as the software, including AML's Copyrighted Source Code.

36. The Taproot Entities entered into a number of different agreements with Athena regarding the expected transactions, including a Development Services Agreement, dated June 19, 2024, between Athena and PSBC ("Athena-PSBC Software Agreement").

37. In the Athena-PSBC Software Agreement, PSBC agreed to "develop" and sell a software platform to Athena, including source code and related intellectual property. However, Mirch and the Taproot Entities never intended to "develop" a software platform but rather to simply steal AML's Copyrighted Source Code and sell it to Athena for a large profit for use on the Bitcoin ATMs.

38. It is believed that Athena was fully aware that the Source Code and software platform that Mirch and the Taproot Entities planned to transfer belonged to AML.

39. Eventually, Mirch, acting individually and on behalf of the Taproot Entities, fraudulently deceived Pineo into providing him with AML's Copyrighted Source Code.

Specifically, Mirch convinced, persuaded and/or tricked Pineo by providing him or his company (Bitcom Labs) some form of payment, which was far less than the actual true market-value of AML's Copyrighted Source Code.

40. But AML never authorized any sale of its Code, whether to Mirch or anyone else, nor did AML enter into any form of contract with any of the Defendants for the sale of the Source Code.

41. After misappropriating AML's Copyrighted Source Code, Mirch sold and transferred it, through the Taproot Entities, along with the physical Bitcoin ATMs stolen from S&P, to Athena, who then began illegally operating them using AML's Copyrighted Source Code.

42. Athena and the Taproot Entities recently entered into a Release and Termination Agreement whereby Athena agreed to pay the Taproot Entities $9 million, in addition to the millions it previously paid, for the stolen Bitcoin ATMs and AML's Copyrighted Source Code, which in itself shows how much the Source Code is worth.

43. Athena and the Taproot Entities' use, reproduction, publication, distribution, and making of derivative works of and from AML's Copyrighted Source Code constitutes, among other things, copyright infringement and misappropriation of trade secrets.

44. All conditions precedent to the filing of this action have been fulfilled or waived.

45. Plaintiff has retained the undersigned counsel to represent it in this action and is obligated to pay undersigned counsel's reasonable attorneys' fees, which fees, together with costs, Plaintiff is entitled to recover from Defendants pursuant to at least 17 U.S.C. § 505 and 18 U.S.C. § 1836(b).

## COUNT I
## Copyright Infringement
## (Against all Defendants)

46. AML re-alleges and re-avers paragraphs 1-45 as though fully set forth herein.

47. This is an action for copyright infringement under the Copyright Act of 1976.

48. AML is the exclusive owner of the '802 Registration and all copyrights and other intellectual property rights associated with its Copyrighted Source Code.

49. With full knowledge and awareness of AML's ownership of its Copyrighted Source Code, Mirch and the Taproot Entities, and, subsequently, Athena, willfully misappropriated, reproduced, published, distributed, used, and/or made derivative works from that Source Code.

50. Defendants have reproduced, published, distributed, used and/or made derivative works from AML's Copyrighted Source Code without authorization or permission from AML and for their own financial gain.

51. Defendants have directly infringed AML's copyrights in and to the Source Code in violation of 17 U.S.C. § 501, *et. seq.*, and such infringement is willful and deliberate.

52. As a result of the foregoing, Defendants have violated AML's exclusive rights with respect to the registered Source Code, including without limitation, the right to use, copy, and/or distribute the work, and AML has been damaged.

53. AML is entitled to its actual damages and a disgorgement of Defendants' profits that (i) are attributable to the infringement and (ii) are not taken into account in computing the actual damages, in an amount to be proved at trial, together with all other relief allowed under the Copyright Act.

54. Defendants' infringement has caused and continues to cause irreparable harm to AML, for which it has no adequate remedy at law. Unless this Court restrains Defendants from

9

their continued infringement, the harm will continue to occur in the future. Accordingly, AML is entitled to a preliminary and/or permanent injunction.

## COUNT II
## Contributory Copyright Infringement
## (against Mirch and Taproot Entities)

55. AML re-alleges and re-avers paragraphs 1-45 and as though fully set forth herein.

56. This is an action for contributory copyright infringement.

57. As described above, Defendants, including Athena, directly infringed AML's copyrights in and to its Source Code.

58. Mirch and the Taproot Entities knew of the infringing activities described herein and they intentionally induced and/or encouraged Athena to directly infringe, and/or materially contributed to Athena's direct infringement of, AML's Copyrighted Source Code.

59. These actions by Mirch and the Taproot Entities were done intentionally and willfully to bring about the copyright infringement.

60. As a result, AML has been damaged.

61. Mirch and the Taproot Entities' contributory infringement has caused and continues to cause irreparable harm to AML, for which it has no adequate remedy at law. Unless this Court restrains Defendants from their continued contributory infringement of AML's copyrights, the harm will continue to occur in the future. Accordingly, AML is entitled to a preliminary and/or permanent injunction.

## COUNT III
## Vicarious Copyright Infringement
## (against Mirch)

62. AML re-alleges and re-avers paragraphs 1-45 as though fully set forth herein.

63. This is an action for vicarious copyright infringement under the Copyright Act.

64. Mirch is the CEO and/or managing member of both Taproot and PSBC and has the capacity to control the acts of Taproot and PSBC, and has the ability to supervise the acts of unauthorized use, unauthorized access, and infringement of the AML Source Code committed by Taproot and PSBC.

65. Mirch induced, caused, and/or was a motivating force behind the theft of the Source Code, as well as the unauthorized use, unauthorized access, and/or infringement of the Source Code. At all times, Mirch knew that the Taproot Entities' possession and use of the Source Code was unauthorized, unlawful and an infringement of AML's rights.

66. Mirch has a direct financial interest in and/or actually participated in the aforementioned unauthorized use, unauthorized access, and/or infringement of the AML Code, and Mirch directly participates in the profits of the unlawful and unauthorized actions described herein.

67. As a result, Mirch is liable for vicarious copyright infringement of AML's Copyrighted Source Code covered by its '802 Registration.

68. AML has been damaged by Mirch's unlawful activities and is entitled to preliminary and permanent injunctive relief to prevent all such infringement.

### COUNT IV
### Misappropriation of Trade Secrets under 18 U.S.C. § 1836 et seq.
### (against all Defendants)

69. AML re-alleges and re-avers paragraphs 1-45 as though fully set forth herein.

70. This is an action for misappropriation of trade secrets under 18 U.S.C. § 1836 *et. seq*.

71. Portions of AML's Copyrighted Source Code constitute protected trade secrets, and AML owns all rights, title and interests in the trade secrets.

72. AML has taken reasonable measures to keep the trade secret portions of its Source Code confidential, and it has not disclosed them to any third parties. The only individuals with access to the trade secret portions are developers of the Source Code bound by confidentiality agreements.

73. The information in the trade secret portions of the Source Code derives independent economic value, actual and potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

74. The trade secret portions of the Source Code are used for Bitcoin ATMs but are not ascertainable by third parties and cannot be duplicated without access.

75. Defendants misappropriated AML's Copyrighted Source Code and are using AML's trade secrets in connection with Bitcoin ATMs.

76. The infringing Bitcoin ATMs and unlawful copies of AML's Copyrighted Source Code are being used throughout the United States and, thus, the trade secrets, as well as Defendants' misappropriation and use of them, relate to interstate commerce.

77. As a result of Defendants' misappropriation and use of AML's trade secrets, AML has been damaged and is entitled to recover from Defendants: (1) (a) all damages resulting from such misappropriation and use; and (b) damages for any unjust enrichment caused by the misappropriation of trade secrets that is not addressed in computing damages for actual loss or (2) alternatively, a reasonable royalty.

78. Moreover, because the trade secrets at issue were willfully and maliciously misappropriated by Defendants, AML is also entitled to exemplary damages in the amount of two times damages awarded, plus its reasonable attorney's fees and costs.

79. No adequate remedy at law exists, and AML is entitled to injunctive relief against Defendants to prevent their further misappropriation and/or use of the trade secrets and formulas. Mirch and the Taproot Entities have already disclosed the code to Athena, and AML is entitled to preliminary and permanent injunctive relief to prevent additional future disclosure of AML's trade secrets.

**COUNT V**
**Unfair Competition**
**(Against Athena and Taproot Entities)**

80. AML re-alleges and re-avers paragraphs 1-45 as though fully set forth herein.

81. Athena and Taproot are or were competitors to AML.

82. AML's Source Code is used in connection with Bitcoin ATMs across the country. Consumers associate the origin of the Source Code on such ATMs as being provided by AML.

83. Defendants' unauthorized use of the Source Code is causing or is likely to cause customer confusion as to the source or the origin of the Bitcoin ATMs with Source Code, as consumers are likely to believe that Defendants' ATMs using the infringing code are machines lawfully using AML's Copyrighted Source Code when they are not. Moreover, Defendants' unauthorized use of the infringing code has allowed Defendants to use, trade off of, and benefit from AML and its valuable goodwill.

84. Defendants are engaging in unfair acts of competition.

85. Defendants' use of the Source Code is causing and will continue to cause damage to AML including, but not limited to, irreparable harm. AML has no adequate remedy at law.

86. AML is entitled to a temporary and permanent injunction against Defendants, as well as all other remedies available including, but not limited to, compensatory damages, disgorgement of profits, treble damages and profits, and costs and attorneys' fees.

**COUNT VI**
**Conversion**
**(Against all Defendants)**

87. AML re-alleges and re-avers paragraphs 1-34 as though fully set forth herein.

88. In or about June 2024, Mirch and the Taproot Entities fraudulently acquired AML's Copyrighted Source Code without authorization or permission from AML. They wrongfully asserted ownership and took possession of the Source Code, which was inconsistent with true and sole ownership of the code by AML.

89. Mirch and the Taproot Entities then sold and transferred the AML's Copyrighted Source Code to Athena and, upon information and belief, Athena at all times knew that Mirch and the Taproot Entities had acquired the Source Code through unlawful and/or improper means.

90. Athena currently retains possession of the Source Code, has wrongfully asserted ownership and possession of the Source Code, and is using it for financial gain. Such actions by Athena are inconsistent with AML's true and sole ownership of the Source Code.

91. As a direct and proximate result of Defendants' unauthorized conduct, AML has been damaged and is entitled to recover from Defendants all damages resulting from the conversion, as well as a return of the Source Code.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, AML SOFTWARE, INC., prays for judgment against Defendants, ATHENA BITCOIN, INC. d/b/a ATHENA BITCOIN GLOBAL, TAPROOT ACQUISITION ENTERPRISES, PSBC, LLC and JORDAN MIRCH as follows:

A. Finding Defendants liable for infringement of AML's Copyrighted Source Code and U.S. Copyright Registration TXu 2-507-802, liable for misappropriation of AML's trade secrets, and otherwise liable for the actions and claims described herein;

B. For preliminary and permanent injunctive relief enjoining and restraining Defendants and their respective officers, employees, and agents, and all persons or entities in active concert or participation with Defendants:

    i. from using AML's Copyrighted Source Code and/or otherwise from infringing AML's copyrights;

    ii. from further misappropriating and/or using AML's trade secrets; and

    iii. injuring AML's goodwill and reputation.

C. Ordering Defendants to return or destroy all versions of the Source Code in their possession, custody or control;

D. Ordering that Defendants be directed to file with this Court and serve upon Plaintiff within thirty (30) days after service of the injunction a report in writing under oath, setting forth in detail the manner and form in which Defendants have complied with the permanent injunction;

E. Ordering Defendants to account for all profits derived from Defendants' unlawful use of the infringing code and/or trade secrets;

F. Ordering Defendants to pay Plaintiff monetary relief under 17 U.S.C. § 504 in an amount equal to (a) the actual damages suffered by Plaintiff as a result of Defendants' copyright infringement; and (b) Defendants' profits that are attributable to Defendants' copyright infringement and that are not taken into account in computing actual damages, or alternatively, statutory damages;

G. Ordering Defendants to pay Plaintiff monetary relief under 18 U.S.C. § 1836 for (1) (a) all damages for actual loss to Plaintiff caused by Defendants' misappropriation and use of Plaintiff's trade secrets; and (b) damages for any unjust enrichment caused by the misappropriation

of trade secrets that are not addressed in computing damages for actual loss or (2) alternatively, a reasonable royalty;

      H.      Finding that the trade secrets at issue were willfully and maliciously misappropriated by Defendants and, thus awarding Plaintiff exemplary damages in the amount of two times damages awarded;

      I.      Ordering Defendants to pay Plaintiff monetary relief for all damages incurred by Plaintiff as a result of Defendants' unfair competition and/or conversion of the Source Code;

      J.      Awarding Plaintiff its reasonable attorneys' fees and costs incurred in connection with this action;

      K.      For prejudgment interest according to law;

      L.      Finding that Plaintiff is entitled to recover its costs of Court; and

      M.      For such other and further relief the Court deems just and proper.

Dated: September 23, 2025            Respectfully submitted,

By: /s/Joshua D. Martin
Joshua D. Martin
Florida Bar No. 028100
josh.martin@johnsonmartinlaw.com
Matthew S. Nelles
Florida Bar No. 009245
matt.nelles@johnsonmartinlaw.com
JOHNSON & MARTIN, P.A.
500 W. Cypress Creek Rd., Suite 430
Fort Lauderdale, Florida  33309
Telephone:  (954) 790-6699
Facsimile:  (954) 206-0017

*Attorneys for Plaintiff*