**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Civil Action No.: 1:25-cv-24378-RAR**

AML SOFTWARE, INC.,

Plaintiff,

vs.

ATHENA BITCOIN, INC., d/b/a ATHENA BITCOIN GLOBAL, PSBC, LLC, JORDAN MIRCH, BITOM LABS INC., and RYAN PINEO,

Defendants.
_______________________________________/

# DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) AND (6) AND INCORPORATED MEMORANDUM OF LAW

Defendants, Athena Bitcoin, Inc. d/b/a Athena Bitcoin Global (**"Athena"**), PSBC, LLC (**"PSBC"**), Jordan Mirch (**"Mirch"**) (Athena, PSBC, and Mirch, collectively, the **"PSBC Defendants"**), Bitom Labs Inc. (**"Bitom"**), and Ryan Pineo (**"Pineo"**) (all defendants collectively, the **"Defendants"**), hereby file this Motion to Dismiss Plaintiff, AML Software, Inc.'s (**"AML"**) Amended Complaint (**"Amended Complaint"**) (Dkt. #6) and Incorporated Memorandum of Law, and in support thereof state as follows:

## Introduction

This case stems from AML's license of its computer source code (the **"AML Source Code"**) – what it describes as the "guts" of Bitcoin ATMs – to PSBC. As the objective communications between the parties confirm, AML granted the license to Pineo's company, Bitom, who in turn licensed it to PSBC with the knowledge (and authorization) that PSBC would use it to develop a new source code (the **"PSBC Source Code"**) for use by Athena in its Bitcoin ATMs.

More than fifteen months after the license was issued, AML filed this lawsuit alleging claims based in copyright infringement. The facts pled, however, confirm that AML has no claim. AML admits that it granted a license to PSBC, which it knew would be used by Athena in connection with operating Bitcoin ATMs; admits that there was no written agreement governing this license; and admits that there was nothing expressly limiting the scope and use of the license at the time granted. Despite this, AML claims that it had the ability to, and did, unilaterally terminate the license. AML cannot terminate the license. Based on AML's own admissions, AML granted an irrevocable license to the PSBC Defendants, which is fatal to its claims.

The Amended Complaint asserts eight claims: Count I, for a declaratory judgment that AML owns the AML Source Code and that the Defendants have no right to use it (or any derivative works created from it); Count II, for breach of fiduciary duty against Pineo; Count III, for copyright infringement; Count IV, for contributary copyright infringement against Mirch and PSBC; Count V, for vicarious copyright infringement; Count VI, for misappropriation of trade secrets; Count VII, for conversion of the AML Source Code; and Count VIII, for conversion of license payments against Pineo. Each of these claims must fail.

First, Count I fails because there is no actual controversy regarding title to the AML Source Code. There are no allegations that any of the PSBC Defendants have asserted ownership rights to the AML Source Code. Quite the opposite. AML alleges there is no written agreement purporting to transfer title to the AML Source Code. As a matter of law, title cannot be transferred without a written agreement. There is no dispute that AML still holds title to the AML Source Code without a written agreement, and AML does not allege that the PSBC Defendants have claimed otherwise. Moreover, the verification of Pineo, referred to in the Amended Complaint and the Consulting Agreement between PSBC and Bitom (**"Bitom-PSBC Consulting**

**Agreement"**), attached to the Amended Complaint as "Exhibit 2" confirm Bitom did not transfer title to the AML Source Code, but developed a new Bitcoin ATM software for use by Athena. Am. Compl., Ex. 2 at Schedule 1.

The remaining relief in Count I– a request for a declaration that Defendants have no right to use the AML Source Code or any derivative works – should be dismissed because it is duplicative of AML's claims for copyright infringement and misappropriation of trade secrets.

Count II, for breach of fiduciary duty against Pineo, should be dismissed because AML's allegations demonstrate that Pineo acted with the knowledge, authorization, and acquiescence of Sonny Meraban (**"Meraban"**), the trustee of AML's sole shareholder.

The crux of AML's lawsuit lies with Count III, its claim for copyright infringement. AML admits that an implied license was granted to the PSBC Defendants and that no written agreement governs this license. Critically, AML also alleges that *no* express limitations were placed on this license at this time it was granted. As a matter of law, this license is irrevocable. *See Barn Light Elec. Co., LLC v. BarnLight Originals, Inc.*, No. 8:14-CV-1955-MSS-AEP, 2017 WL 11632561 (M.D. Fla. Aug. 3, 2017). The irrevocable license, established by AML's allegations, conclusively demonstrates that it will never be able to assert a claim for copyright infringement. In the absence of a claim for direct infringement, Counts IV and V, for contributory and vicarious infringement based on the same allegations, fail as well.

AML also cannot state a claim for misappropriation of trade secrets, the subject of Count VI. By definition, misappropriation is an action done without express or implied consent of the owner of the trade secrets. The irrevocable license constitutes consent for the PSBC Defendants to use any purported trade secrets that may be contained in the AML Source Code.

Count VII, for conversion of the AML Source Code, fails for multiple reasons. To state a claim for conversion, a plaintiff must allege an unauthorized act that deprives the owner of its property. AML's allegations establish that Defendants were acting pursuant to an irrevocable license, which granted Defendants authorization to use the AML Source Code. Second, copyright infringement does not deprive a plaintiff of its property. Because of this, as a matter of law, copyright infringement cannot be the basis for a conversion claim. Lastly, this claim is preempted by the Copyright Act, necessitating its dismissal.

Count VIII, for conversion against Pineo "regarding license payments," fails to identify the "third-party licensees" referenced, rendering the claim impermissibly vague and failing to meet the plausibility standard required under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) and *Ashcroft v. Iqbal*, U.S., 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

For all of these reasons, discussed in greater detail below, AML's claims should be dismissed with prejudice.

## <u>Facts[1] Relevant to the Motion</u>

### A. Allegations of the Amended Complaint.

AML is the owner of the AML Source Code. Am. Compl., ¶ 28. In May or June of 2024, the trustee of AML's sole shareholder, Meraban, learned that AML licensed the AML Source Code to Athena. *Id.*, ¶ 44. Meraban did not object to this license. *Id.* AML alleges that there was no written agreement for this license but alleges in conclusory fashion that the license was revocable. *Id.*, ¶¶ 44 and 46. There were no express limitations placed on this license at the time the software was delivered to Athena, either as to use or duration, nor does AML allege there were. Instead,

[1] The facts recounted herein are accepted as true for purposes of this Motion only.

AML alleges that there are no records regarding the scope of the license. *Id.*, ¶ 46. Athena made payments for this license for just under $100,000 per month. *Id.*, ¶ 47. Athena made payments to Bitom, who paid AML. *Id.*, ¶ 48. At the time of this license, Pineo was the president of AML. *Id.*, ¶ 73.

As the Bitom-PSBC Consulting Agreement (Am. Compl., Ex. 2) demonstrate, a license for the AML Source Code was granted to PSBC. PSBC used it to develop the PSBC Source Code, which was developed for Athena. Am. Compl., Ex. 3. Meraban has been aware of these facts, including the fact that the license was irrevocable, since **at least October 2024**. *Id.*, ¶ 65. However, he did not file this lawsuit until eleven months later, September 23, 2025, because, in his own words, he wanted to continue collecting the substantial payments – totaling nearly $100,000 per month – for the license. *Id.*, ¶¶ 47, 67.

**B. Key differences between the original Complaint and Amended Complaint.**

On October 1, 2025, counsel for the PSBC Defendants sent a draft Rule 11 motion and correspondence to AML's counsel relating to concerns stemming from the allegations of the original Complaint. The draft motion was accompanied by a verification from Pineo, who had provided some of his Whatsapp communications with Meraban to counsel for the PSBC Defendants. A copy of this Verification and exhibits thereto are attached as **Exhibit A**.[2] Those materials confirm many of the patent falsehoods in the original pleading. Despite AML claiming this first Rule 11 motion was "an overt attempt to intimidate Plaintiff" (Am. Compl., ¶ 78), following receipt, AML and its counsel revised the Complaint in several significant ways. In the original Complaint, AML asserted that the PSBC Defendants had *no* authorization to use the AML

[2] As this Verification and its exhibits are referenced in the Amended Complaint (Am. Compl., ¶¶ 49-51, 65-66, and 78-88) and central to AML's claims, these documents may be considered on a motion to dismiss under Rule 12(b)(6). *See Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024).

Source Code. Complaint (Dkt. #1), ¶¶ 39-41. AML now acknowledges both this license and that Meraban has been aware of these facts **since June 2024** – 15 months before filing the original complaint that misrepresented the truth. Am. Compl., ¶ 44.

AML also dismissed Taproot Acquisition Enterprises, LLC (**"Taproot"**) as a defendant. Taproot is not a party to the subject agreements, is not licensing, using, or distributing the AML Source Code, and there were no allegations in the original Complaint that it took **any** actions with respect to the AML Source Code. Taproot is, however, the company that Meraban and his other company, SandP Solutions, LLC (**"S&P"**), are suing in Cook County, Illinois. Compl., ¶28. That unrelated lawsuit is the only ostensible basis for why Taproot was named as defendant in the original Complaint. AML still discusses this lawsuit and that dispute in the Amended Complaint, but omits any mention of Taproot. Am. Compl., ¶¶ 38-42.

Third, Pineo's affidavit pointed out that he was the President, Secretary, and Sole Director of AML at the time this lawsuit was filed (again, a fact of which Meraban was aware). As such, he was the sole person at AML with the authority to initiate a lawsuit on behalf of the company; yet, the lawsuit was filed without his knowledge. Only after being confronted with this fact did Meraban terminate Pineo as a director to cure AML's lack of standing (Am. Compl., ¶¶ 73-77). This also changed AML's strategy with respect to its allegations about Pineo. In the original Complaint, AML alleged that Mirch fraudulently deceived and tricked Pineo into providing him with the AML Source Code. Comp., ¶ 39. The pleading now asserts that Pineo was a "main player" in the actions in this case, who was part of the "scheme" to transfer the AML Source Code to PSBC without authorization. Am. Compl., ¶ 75.

In direct response to Pineo's Verification, AML asserts a new claim for declaratory judgment concerning title to the AML Source Code. Am. Compl., ¶¶ 78-88, 90-100. Although

this claim is based entirely on the Verification, AML did not attach it to the Amended Complaint; instead, AML selectively quotes from that Verification to concoct a controversy based on language that Pineo "sold" the AML Source Code. *Id.*, ¶ 81. Nowhere in the Verification does Pineo allege that title to the AML Source Code was transferred to PSBC or Athena. Ex. A. The quoted language comes directly from Meraban, who stated that AML "sold", or the PSBC Defendants "bought", the AML Source Code. *Id.*, ¶ 7 and Ex. 2 (6/18/2024, Meraban: "so whose (*sic*) **buying** the software"). The Verification and attached Whatsapp messages confirm that Meraban understood this license was irrevocable – not one that could be taken back. These communications also confirm that Meraban *always* understood the license was granted to Mirch's company, PSBC, not directly to Athena. *Id.*, Ex. 2 (6/14/24, Meraban: "God willing. Let Jordan [Mirch] keep going. f--- it"); (6/18/24, Meraban: "so whose **buying** the software"; Pineo: "Athena"; Meraban: "lol how do do they get teh software I guess from Jordan [Mirch]; once Jordan pays you"; Pineo: "I **sell** to Jordan. Jordan transfers to Athena") (errors in original).

These facts confirm that AML can never state a claim against Defendants. But even more, these facts confirm that both AML and its counsel are fully aware of the baselessness of the claims in the Amended Complaint. The PSBC Defendants sent a revised Rule 11 motion to counsel for AML on December 5; pursuant to Rule 11(c)(2), this motion will be filed on or after December 26.

## Argument

### I. Legal Standard

Pursuant to Rule 12(b)(1), claims that do not present an actual controversy must be dismissed. "Article III of the Constitution limits federal courts to adjudicating actual 'cases' and 'controversies.'" *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1210 (11th Cir. 2019). "The case-or-controversy requirement sets fundamental limits on federal judicial

power." *Id.* Where there is no live controversy, a claim should be dismissed for lack of subject matter jurisdiction. *See Hendrix v. Poonai*, 662 F.2d 719, 722 (11th Cir. 1981) (affirming dismissal of declaratory judgment claim where no actual controversy was presented).

Pursuant to Rule 12(b)(6), a pleading may be dismissed for failure to state a claim upon which relief can be granted. "A plaintiff must plausibly allege all the elements of the claim for relief." *Feldman v. Am. Dawn, Inc.*, 849 F.3d 1333, 1339 (11th Cir. 2017). "When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true." *Fin-S Tech, LLC v. Surf Hardware Int'l-USA, Inc.*, No. 13-CV-80645, 2014 WL 12461349, at *4 (S.D. Fla. Jan. 7, 2014). "However, the Court need not accept legal conclusions as true." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In order to survive dismissal under Rule 12(b)(6), a plaintiff "must 'state a claim to relief that is plausible on its face.'" *Feldman*, 849 F.3d at 1340 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Additionally, "when resolving a motion to dismiss or a motion for judgment on the pleadings, a court may properly consider a document not referred to or attached to a complaint under the incorporation-by-reference doctrine if the document is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged." *Johnson v. City of Atlanta,* 107 F.4th 1292, 1300 (11th Cir. 2024). "And if the documents attached to the complaint or the motion to dismiss contradict the general and conclusory allegations of the pleading, the attached documents govern." *Barley as trustee of Mary L. Barley Family Tr. dated 1/10/1996 v. Islamorada, Vill. of Islands*, 794 F. Supp. 3d 1226, 1245 (S.D. Fla. 2025) (internal citations omitted).

## II. AML's claim for a declaratory judgment (Count I) should be dismissed pursuant to Rule 12(b)(1) and (6).

**A. There is no actual controversy regarding title of the AML Source Code.**

There is no actual controversy over title to the AML Source Code, necessitating dismissal of Count I under Rule 12(b)(1). "Echoing the 'case or controversy' requirement of Article III, the Declaratory Judgment Act 'provides that a declaratory judgment may only be issued in the case of an actual controversy.'" *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1210 (11th Cir. 2019) (citing *Emory v. Peeler*, 756 F.2d 1547, 1551-52 (11th Cir. 1985)); *see* 28 U.S.C. § 2201 ("In a case of actual controversy within its jurisdiction…any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration").

There are no allegations that the PSBC Defendants contend they own the title to the AML Source Code. Instead, AML bases this entire claim on statements by Pineo in his Verification. Am. Compl., ¶¶ 78-88, 90-100. The Verification and its exhibits are central to AML's claims – it forms the entire foundation of Count I – and can properly be considered in connection with this Motion. *Johnson v. City of Atlanta,* 107 F.4th 1292, 1300 (11th Cir. 2024). But the Verification does not actually create the controversy that AML claims it does. Pineo does not contend that title to the AML Source Code transferred to any of the PSBC Defendants: instead, he establishes that a license was granted to these Defendants that was irrevocable, and with the knowledge that the AML Source Code would be used to create a new software for use by Athena. Ex. A, ¶¶ 3-7. Where the Verification contradicts the conclusory allegations in the Amended Complaint, the Verification controls. *Barley as trustee of Mary L. Barley Family Tr. dated 1/10/1996 v. Islamorada, Vill. of Islands*, 794 F. Supp. 3d 1226, 1245 (S.D. Fla. 2025).

The remaining allegations confirm that there is no controversy. The fact that AML granted the PSBC Defendants an irrevocable license to use the AML Source Code is reflected in the Bitom-

PSBC Consulting Agreement, appended to the Amended Complaint as Exhibit 2. *See* Am. Compl., Ex. 2 at § 5.5 (granting an irrevocable license to pre-existing materials incorporated in or combined with the PSBC Source Code). Additionally, the ownership of a copyright cannot be transferred without a written instrument. 17 U.S.C. § 204(a). AML alleges that it never entered a written agreement to transfer ownership of the AML Source Code. Am. Compl., ¶¶ 7, 83. Accordingly, there is no dispute or controversy that AML still holds title to its Source Code. Accordingly, Count I should be dismissed with prejudice.

### B. AML's declaratory judgment claim should be dismissed as duplicative of its other counts.

In Count I, AML also seeks a declaration that Defendants do not have any right to use, access, reproduce, copy, or distribute the AML Source Code, and should return or destroy any copies or derivatives of the software. Am. Compl., ¶ 100. This relief is duplicative of the relief AML seeks elsewhere in the Amended Complaint. Specifically, in Counts III, IV, V, VI, *and* VII, AML asks the Court to enjoin Defendants from using, and order the return of, the AML Source Code, including any derivative works. Am. Compl., ¶¶ 117,124, 131, 142, and 148. The declaration sought serves no independent purpose.

Federal courts are granted substantial discretion to decide whether to entertain a claim for declaratory judgment. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). "If a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent upon that court to proceed to the merits before staying or dismissing the action." *Id.* at 288. District courts seated in Florida routinely dismiss requests for a declaratory judgment that are duplicative of other claims in a pleading. "Where, as here, the declaratory judgment count would serve no useful purpose because the issues will be resolved by another claim, courts generally decline to entertain the declaratory judgment count."

*Organo Gold Int'l, Inc. v. Aussie Rules Marine Services, Ltd.*, 416 F. Supp. 3d 1369, 1376 (S.D. Fla. 2019) (collecting cases). Dismissal with prejudice of Count I is likewise warranted on this basis.

**III. AML has not stated a claim for breach of fiduciary duty against Pineo (Count II).**

A plaintiff alleging breach of fiduciary duty must plausibly allege "that a fiduciary duty exists, that a breach of that duty occurred, and that the breach proximately caused harm." *In re January 2021 Short Squeeze Trading Litig.*, 76 F.4th 1335, 1346 (11th Cir. 2023). Even where a fiduciary duty exists, the Eleventh Circuit applies the business judgment rule to protect "directors and officers from liability when they make good faith business decisions in an informed and deliberate manner." *Munford v. Valuation Resch. Corp. (In re Munford, Inc.)*, 98 F.3d 604, 611 (11th Cir. 1996). The rule shields corporate officers from liability for authorized business decisions made after appropriate consultation and consideration.

Although Pineo, as a corporate officer, owed fiduciary duties to AML, the Amended Complaint fails to plausibly allege breach of duty, the second required element, because Meraban, the trustee of AML's sole shareholder, was aware of, did not object to, and encouraged the transactions involving the AML Source Code.

AML expressly admits in the Complaint that "Meraban did not object to a revocable, non-exclusive license because AML was in dire need of revenue/funds[.]" Am. Compl. ¶ 44. That admission is fatal to any claim that Pineo acted without authorization. To the contrary, it demonstrates that Meraban and AML made a conscious business decision to permit the transaction in light of AML's financial condition.

Moreover, AML alleges in the Amended Complaint ongoing communications between Pineo and Meraban regarding these transactions, including Meraban's enthusiastic endorsement of the deal structure, stating "'[w]ould love to get 5 more of these deals. Even if they dont (*sic*)

buy it and just pay is good. thats (*sic*) 75k a month.'" Am. Compl. ¶ 45. This statement unmistakenly reflects Meraban's knowledge of and approval for the transactions. Consistent with those allegations, Meraban had a copy of the Bitom-PSBC Consulting Agreement and appended it to the Amended Complaint as Exhibit 2.

AML also alleges in the Amended Complaint that Meraban continued to receive payments generated by the transactions for months without objection. AML's continued acceptance of benefits of a transaction further confirms Meraban's acquiescence to the arrangement, not breach. Only in October 2024 did Meraban allegedly first learn that Pineo "contended that they had attempted to sell/assign all rights, title and interest in the AML Software rather than merely licensing it." Am. Compl. ¶ 65. Even then, the AML acknowledges in the Amended Complaint that "AML was still unsure exactly what had transpired with respect to its Software and did not immediately file this action for multiple reasons." Am. Compl. ¶ 67. This delay further undermines any claim that Pineo's conduct was unauthorized or concealed.

Taken together, these allegations place Pineo's conduct squarely within the protection of the business judgment rule. The licensing decisions were made with the knowledge, approval, and encouragement of the trustee of AML's sole shareholder and were undertaken to generate revenue for AML during a period of financial distress.

Accordingly, AML's Amended Complaint fails not only to plausibly allege a breach of fiduciary duty, but also to satisfy the third element, proximate harm. The pleaded facts affirmatively show that Pineo acted in good faith to benefit AML and that the challenged conduct generated substantial revenue, rather than harm. Under binding Eleventh Circuit precedent, such allegations are insufficient as a matter of law to sustain a claim for breach of fiduciary duty.

## IV. AML's claim for copyright infringement (Count III) must be dismissed because the factual allegations as pled confirm the PSBC Defendants have an irrevocable license to the AML Source Code.

As the PSBC Defendants have always maintained, they have an irrevocable, non-exclusive license to use and create derivative works from the AML Source Code. In its original pleading, AML denied the existence of this license entirely, instead frivolously claiming that Defendants had *no* authorization to use the AML Source Code. Compl., ¶¶ 39-41. After being confronted with communications between Pineo and Meraban (the driving force behind this lawsuit), AML amended the complaint to acknowledge that the PSBC Defendants had a license to use the AML Source Code. Am. Compl., ¶¶ 4, 44, 47, 50, 64, 86. This license dooms AML's copyright infringement claim. "A copyright owner waives the right to sue, however, for uses of copyrighted material that are authorized by a non-exclusive license." *Great Minds v. Fedex Office & Print Services, Inc.*, 886 F.3d 91, 94 (2d Cir. 2018) (affirming dismissal of copyright infringement claim); *see also MidlevelU, Inc. v. ACI Info. Group*, 989 F.3d 1205, 1216 (11th Cir. 2021) (holding that a copyright owner who grants a nonexclusive license waives the right to sue for infringement).

Seeking to avoid this inevitable result, AML baselessly claims that while Defendants had a license to use the AML Source Code, this license has been terminated. Am. Compl., ¶ 68. But where the AML Source Code was delivered without any express limitations, it is deemed irrevocable as a matter of law – AML cannot change this result after the fact by filing a lawsuit. *See Barn Light Elec. Co., LLC v. BarnLight Originals, Inc.*, No. 8:14-CV-1955-MSS-AEP, 2017 WL 11632561 (M.D. Fla. Aug. 3, 2017).

The holding in *Barn Light Elec. Co., LLC* is directly on point. In that case, the plaintiff, a retail company that sells light fixtures, provided the defendant, a retail distributor, with copyrighted materials at various times throughout the parties' relationship. *Barn Light Elec. Co.*,

*LLC*, 2017 WL 11632561 at *1. Plaintiff never included any express written or oral limitations at the time it delivered the copyrighted materials to defendant. *Id.* Plaintiff admits that it gave defendant a license to use its copyrighted materials. *Id.* The parties did not have a written contract that reflected the terms of their business relationship. *Id.* When plaintiff terminated the parties' relationship, it requested that defendant remove the copyrighted materials from its website; when defendant did not acquiesce, plaintiff brought an action for copyright infringement. *Id.*, at *2. The court held that as a matter of law, where "no written or oral limitation was placed on the use of the material at any time, not at the time of delivery or thereafter", plaintiff could not "revoke the license and retroactively limit the license previously extended." *Id.*, at *3. Instead, because the plaintiff "freely handed over its voluminous copyrighted materials…with the intention that [defendant] copy and distribute the works", and "failed to place *any* express limitation on the use of its copyrighted works at the time of delivery or any relevant time thereafter", the implied license was irrevocable. *Id.* at *4-6.

The same is true here. AML handed over the AML Source Code (the so-called "'guts' of Bitcoin ATMs") knowing that this material would be used by Athena in connection with its Bitcoin ATMs. Am. Compl., ¶ 44. AML alleges that there was no written agreement governing this transaction. In the absence of a written agreement, the license is a nonexclusive, implied license. *Barn Light Elec. Co., LLC,* at *3. But more than that, AML also asserts that there was no writing expressing *any* limitation as to either the scope of the license or the duration for which it would be granted. Am. Compl., ¶ 46 ("Nor are there any known records documenting the purported scope of the purported license, the length of the purported license…or any other terms."). Instead, as alleged, Meraban "did not object" to this license. *Id.*, ¶ 44. As AML admits that there was *no* express limitation on the license at the outset, as a matter of law, the license is irrevocable. *Barn*

*Light Elec. Co., LLC*, at *6; *see also Karlson v. Red Door Homes, LLC*, 611 Fed. Appx. 566, 571 (11th Cir. 2015) (holding that where no limitation was placed on implied, nonexclusive license at time the license was granted, licensee was not prohibited from selling and relicensing copyrighted work); *see further Lulirama Ltd., Inc. v. Axcess Broad. Services, Inc.*, 128 F.3d 872, 882 (5th Cir. 1997) (rejecting argument that copyright owner had right to unilaterally revoke an implied license by filing lawsuit).

Taking AML's allegations as true, the license granted to the PSBC Defendants is *not* revocable, requiring that its copyright infringement claim be dismissed with prejudice. *See Great Minds*, 886 F.3d at 94.

**V. AML's claims for contributory copyright infringement (Count IV) and vicarious copyright infringement (Count V) fail as well.**

In addition to its claim for copyright infringement, AML asserts claims against Mirch and PSBC for contributory copyright infringement, and against Mirch for vicarious copyright infringement, based on the same allegations. Am. Compl., ¶¶ 118-131. "The Eleventh Circuit has stated that a contributory infringer is one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another." *Millennium Funding, Inc. v. 1701 Mgmt. LLC*, 576 F. Supp. 3d 1192, 1210 (S.D. Fla. 2021), *amended on reconsideration in part*, No. 21-CV-20862, 2022 WL 845468 (S.D. Fla. Mar. 22, 2022) (internal citation omitted). For vicarious copyright infringement, "a plaintiff must show that the defendant profits directly from the infringement and has a right and ability to supervise the direct infringer." *GlobalOptions Services, Inc. v. N. Am. Training Group, Inc.*, 131 F. Supp. 3d 1291, 1299–300 (M.D. Fla. 2015) (internal citation omitted).

In order to survive dismissal on these claims, AML must sufficiently allege direct infringement. *See GlobalOptions Services, Inc.* at 1299 (dismissing claims for contributory and

vicarious infringement where plaintiff did not sufficiently allege copyright infringement); *see also Barn Light Elec. Co., LLC v. BarnLight Originals, Inc.*, No. 8:14-CV-1955-MSS-AEP, 2017 WL 11632561, at *7 (M.D. Fla. Aug. 3, 2017) ("Likewise, because Hi-Lite's claims against BLE for direct copyright infringement fail, Hi-Lite's claims against the Scotts for vicarious and contributory copyright infringement also fail as a matter of law.").

As discussed above, AML's claim for copyright infringement fails. AML has failed to state any factual allegations in support of the remaining elements of contributory copyright infringement either. It has not alleged that Mirch or PSBC had knowledge of any infringement by another party or that Mirch or PSBC induced, caused, or materially contributed to the infringing conduct of another party; instead, AML merely recites these elements in Count IV. Am. Compl., ¶ 121. These "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)..

## VI. The irrevocable license defeats AML's claim for misappropriation of trade secrets (Count VI).

AML cannot state a claim for misappropriation of trade secrets under 18 U.S.C. § 1836, *et seq*. either. Under that statute, misappropriation is defined as "disclosure or use of a trade secret of another *without express or implied consent*…" 18 U.S.C.§ 1839(5)(B). As a matter of law, a party who is granted an unlimited license to software cannot misappropriate any trade secret embodied therein. *See Asset Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748, 758 (9th Cir. 2008).

## VII. AML cannot state a claim for conversion (Count VII).

### A. The irrevocable license defeats AML's conversion claim as well.

As with the claims for copyright infringement and misappropriation of trade secrets, AML's conversion claim fails in light of the irrevocable license granted to the PSBC Defendants. "Conversion is 'an unauthorized act which deprives another of his property permanently or for an

indefinite time.'" *Fin-S Tech, LLC v. Surf Hardware Int'l-USA, Inc.*, No. 13-CV-80645, 2014 WL 12461349, at *13 (S.D. Fla. Jan. 7, 2014) (citing *Shelby Mut. Ins. Co. of Shelby, Ohio v. Crain Press, Inc.*, 481 So. 2d 501, 503 (Fla. Dist. Ct. App. 1985)). Where a defendant has the right to possess property pursuant to a license, a plaintiff cannot state a claim for conversion. *Fin-S Tech, LLC* at *13 (dismissing claim for conversion).

**B. Because the AML Source Code is a copyright, AML cannot allege it was deprived of the property.**

In addition, AML cannot allege that it was deprived of possession of the AML Source Code, as required to state a claim. Under Florida law, "[t]he gist of a conversion has been declared to be not the acquisition of the property of the wrongdoer, but the *wrongful* deprivation of a person of property to the possession of which he is entitled." *Utah Power Sys., LLC v. Big Dog II, LLC*, 352 So. 3d 504, 508 (Fla. 1st DCA 2022) (quoting *Star Fruit Co. v. Eagle Lake Growers*, 160 Fla. 130, 33 So. 2d 858, 860 (1948) (emphasis in original). "For there to be a wrongful deprivation, there must be a "wrongful exercise or assumption of authority over another's goods, depriving him of the possession, *permanently or for an indefinite time*." *Id.* (emphasis in original).

AML has not alleged – and cannot – that it has been deprived of possession of the copyrighted AML Source Code. "Copyright infringement will not form the basis of a conversion claim because copying a plaintiff's work amounts to an invasion of an intangible property right but fails to deprive the plaintiff of his property." *Santilli v. Cardone*, No. 807-CV-308-T-23MSS, 2008 WL 2790242, at *5 (M.D. Fla. July 18, 2008). As a result, its claim for conversion of the code fails.

**C. AML's conversion claim is preempted.**

Finally, even if AML could state a claim for conversion, this claim is preempted by the Copyright Act. "[I]t is clear that when a conversion claim—like OpenRisk's—rests on an

allegation of wrongful copying and distribution of intellectual property, it is 'equivalent' to a copyright infringement claim and thus preempted under the Copyright Act." *OpenRisk, LLC, v. Microstrategy Services Corp.*, 876 F.3d 518, 524 (4th Cir. 2017) (granting summary judgment to defendant on conversion claim due to preemption). AML's conversion claim, which is based on the same allegations as its copyright claim, must be dismissed. *See Poet Theatricals Marine, LLC v. Celebrity Cruises, Inc.*, 515 F. Supp. 3d 1292, 1303 (S.D. Fla. 2021), *aff'd*, No. 21-10410, 2023 WL 3454614 (11th Cir. May 15, 2023) (dismissing conversion claim that was based on display, distribution, or other use of copyright).

**VIII. AML has failed to state a claim for Conversion against Pineo (Count VIII).**

"Conversion is 'an unauthorized act which deprives another of his property permanently or for an indefinite time.'" *Fin-S Tech, LLC*, No. 13-CV-80645, 2014 WL 12461349, at *13 (citing *Shelby Mut. Ins. Co. of Shelby, Ohio*, at 503. Critically, "[n]either an obligation to pay money nor a breach of contract generally gives rise to a claim of conversion in tort." *Kee v. Nat'l Reserve Life Ins. Co.*, 918 F.2d 1538, 1541 (11th Cir. 1990). "Money may be the subject of conversion only where 'it consists of specific money capable of identification.'" *Id.* (quoting *Belford Trucking Co. v. Zagar*, 243 So. 2d 646, 648 (Fla. Dist. Ct. App. 1970)).

Count VIII falls well short of these requirements. The Amended Complaint fails to identify the "third-party licensees" referenced in paragraphs 72, 150 and 151, and alleges no facts concerning the purported "license payments" referenced in paragraph 150. As pleaded, the claim does not identify the allegedly converted funds, their source, their amount, the recipient of the funds, or how any transfer constituted a wrongful exercise of dominion over AML's property.

The Supreme Court has made clear that a plausible claim "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662,

678, 129 S. Ct. 1937, 1949 (2009). To survive a motion to dismiss, a complaint must allege sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 548, 127 S. Ct. 1955, 1961 (2007). Courts therefore look for "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Here, the absence of any identified third-party licensees is not a mere pleading technicality; it is fatal to the claim. Without identifying the parties who allegedly made the payments, the specific funds at issue, or the manner in which Pineo allegedly exercised unauthorized dominion over those funds, the Court cannot draw a reasonable inference of conversion liability. Accordingly, AML's failure to identify the purported "third-party licensees" or the allegedly converted, specifically identifiable funds renders Count VIII fatally deficient under the plausibility standard established by *Twombly* and *Iqbal*, and it should be dismissed with prejudice.

**Conclusion**

This case does not involve copyright infringement, misappropriation of trade secrets, or conversion. It involves a man who collected nearly $1,000,000 for agreeing to a license that his company granted; and, after receiving the bulk of the purchase price, suing his rival and his rival's business associates. Putting aside the objective falsity of AML's allegations (which will be unpacked in the anticipated Rule 11 motions of the Defendants), the Amended Complaint confirms that AML has not, and cannot, state sufficient claims, warranting dismissal with prejudice.

WHEREFORE, Athena Bitcoin, Inc. d/b/a Athena Bitcoin Global, PSBC, LLC, Jordan Mirch, Bitom Labs Inc., and Ryan Pineo, respectfully request that, pursuant to Fed. R. Civ. P. 12(b)(1) and (6) this Court enter an order dismissing the Amended Complaint with prejudice, and for such further relief that the Court deems appropriate and warranted under the circumstances.

Dated: December 22, 2025

Respectfully submitted,

**Athena Bitcoin, Inc. d/b/a Athena Bitcoin Global, PSBC, LLC, and Jordan Mirch**

*/s/ Steven M. Appelbaum*
Steven M. Appelbaum
Florida Bar No. 71399
Saul Ewing LLP
LLC, and Jordan Mirch
515 North Flagler Drive, Suite 1400
West Palm Beach, Florida 33401
Telephone: 305-428-4500
steven.appelbaum@saul.com
edelweiss.cianella@saul.com
Wpb-ctdocs@saul.com

Jordan A. Finfer (jfinfer@pfs-law.com)
Illinois ARDC No. 6296373
Elizabeth L. Archerd (earcherd@pfs-law.com)
Illinois ARDC No. 6329394
Patzik, Frank & Samotny Ltd.
200 S. Wacker Drive, Suite 2700
Chicago, IL 60606
312-551-8300
312-551-1101 (Fax)

**Bitom Labs Inc. and Ryan Pineo**

**LOTT & FISCHER, PL**
*/s/ Ury Fischer*
Ury Fischer
E-mail: ufischer@lottfischer.com
Florida Bar No. 48534
Noah H. Rashkind
Florida Bar No. 21945
E-mail: nrashkind@lottfischer.com
Ariel Weltz
Florida Bar No. 1033815
E-mail: aweltz@lottfischer.com
255 Aragon Avenue, Third Floor
Coral Gables, FL 33134
Telephone: (305) 448-7089
Facsimile: (305) 446-6191