**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Civil Action No.: 1:25-cv-24378-RAR**

AML SOFTWARE, INC., an Illinois
corporation,

              Plaintiff,

v.

ATHENA BITCOIN, INC., d/b/a
ATHENA BITCOIN GLOBAL, a Delaware
corporation, PSBC, LLC, a Delaware
limited liability company, and JORDAN MIRCH, an individual,
BITOM LABS INC., a Canadian Corporation,
and RYAN PINEO, an individual,

              Defendants.

_____/

**PLAINTIFF'S MOTION FOR LEAVE TO FILE FOUR PAGE SUR-REPLY IN RESPONSE TO DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff, AML SOFTWARE, INC. ("AML"), by and through undersigned counsel, respectfully requests leave to file a sur-reply, not to exceed four (4) pages, in response to Defendants, ATHENA BITCOIN, INC. d/b/a ATHENA BITCOIN GLOBAL ("Athena"), PSBC, LLC ("PSBC"), JORDAN MIRCH ("Mirch"), BITOM LABS INC. ("Bitom"), and Ryan Pineo's ("Pineo") (collectively "Defendants"), Motion to Dismiss (ECF No. 27), and states:

    **I.**    **DEFENDANTS' NEW, FALSE AND MISLEADING ARGUMENTS**

On February 6, 2026, Defendants filed their Reply in support of their Motion to Dismiss (DE 59). Defendants raised new arguments for the first time in their Reply that were not raised in their Motion to Dismiss and, in fact, directly contradict positions taken by Defendants in their Motion. Indeed, it appears that Defendants intentionally withheld certain arguments to raise them for the first time in their Reply so that AML would not have an opportunity to respond to them. Thus, AML seeks to file a brief sur-reply to address Defendants' new, contradictory arguments and related false or misleading contentions set forth in Defendants' Reply.

1

For example, Defendants argue now in their Reply <u>for the first time</u> that, with respect to the scope of the license at issue, Pineo had apparent authority "to contract on behalf of AML" as the President and that "the PSBC Defendants were entitled to rely on this presumed authority," for Pineo to provide them whatever license rights they now claim to hold. Defendants <u>did not raise apparent authority in their Motion</u>.[1] In fact, Defendants argued the exact opposite. Specifically, Defendants actually argued that AML licensed the software to Bitom Labs, who in turn licensed (or sub-licensed) the software to PSBC, not that AML licensed the software to PSBC directly. *Motion*, p. 1. Indeed, according to Pineo's Second Affidavit provided in this case (DE 38-1), Pineo testified that AML provided a non-exclusive license to Pineo's company, Bitom Labs, in 2023, and then Bitom Labs "sub-licensed the software to multiple Bitcoin operators" including PSBC. (DE 38-1, ¶¶ 3, 8). That is an important distinction that Defendants seek to distort in their Reply with respect to apparent authority because Pineo was not acting on behalf of AML with respect to the license to PSBC but rather on behalf of Bitom Labs. Bitom Labs could only provide sub-license rights to PSBC that Bitom Labs had obtained from AML. And there is ample evidence demonstrating the limitations on the license rights that AML provided Bitom Labs, including the messages between Meraban and Pineo on page 14 of AML's Response to Motion for Sanctions (DE 49), which could be added to an amended pleading if necessary.[2]

---

[1] During the meet and confer communications regarding the relief requested in this Motion, Defendants advised that their Motion to Dismiss alleged that Pineo was AML's President. While Defendants did allege that fact in the Motion, they did so concerning an argument on standing and authority to bring this lawsuit. *Motion*, p. 6. Asserting a factual allegation is very different than asserting an entirely new legal theory/argument. Defendants' Motion did not assert an argument concerning apparent authority regarding the scope of the license at issue in any capacity and it is a new argument raised for the first time in their Reply.

[2] To the extent that Defendants argue that Pineo also had apparent authority to provide license rights from AML to Bitom Labs, that too would be an entirely new argument not raised in the Motion to Dismiss. It also fails for a number of reasons, including that (a) Pineo's authority was derived from Meraban as the owner; (b) there is concrete evidence between Pineo and Meraban identifying the scope of the license rights and Pineo's authorization; and (c) Pineo also controlled Bitom Labs and could not take corporate opportunities from AML for Bitom Labs without violating fiduciary duties. Indeed, the very attempt to transfer or resell the AML Software to another company for $5.5 million without compensating AML its 50% share of that revenue was clearly a scheme to profit from the AML Code, directly exceeding Pineo's scope set forth in their communications that the Software was "exclusively to be used by the operator your [Pineo] company contacted with only and not to be resold by any operator or your company unless theres [sic] a new payment split of 5050 same as above." (*See* DE 49, p. 14).

Other new, false, misleading, and/or contradictory arguments that AML seeks to address in a sur-reply include:

- Similarly, Defendants contend in the Reply that AML alleged there is no agreement between AML and any of the Defendants setting forth the scope of license at issue and so, according to Defendants, they had unlimited implied license rights. First, that is false – AML alleged that there was no written agreement regarding the license to *Athena/PSBC*. But AML did not allege that there was no evidence governing the scope of the license provided by AML to Bitom Labs. Second, Defendants conflate an oral license with an implied license. An implied license is where one party "(1) creates a work at another person's request; (2) delivers the work to that person; and (3) intends that the person copy and distribute the work." *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1235 (11th Cir. 2010).  AML did not create the AML Software at PSBC's request. It already existed. Thus, the case law that Defendants assert regarding unlimited scope of implied licenses where the work is actually created for the licensee to distribute does not apply here.

- Despite Defendants expressly acknowledging in their Motion to Dismiss that AML sought a declaration in the Amended Complaint that "Defendants have no right to use the AML Source Code *or any derivative works*," Defendants did not raise any arguments regarding ownership of derivative works in their Motion but rather intentionally withheld those arguments to raise them for the first time in their Reply. *Motion*, p. 2 (emphasis added); *Reply*, pp 3-4. Indeed, Defendants' arguments concerning the declaratory judgment claim in their Motion only addressed the controversy over ownership of the AML Software, not derivative works. *Motion*, p. 9-11. Even worse, in the Reply, Defendants conflate potential copyrights by a copyright holder in a derivative work with infringing use of a third party's underlying copyrighted work. AML seeks to address Defendants' new arguments on ownership of derivative works.[3]

---

[3] Issues include: (1) whether AML authorized Bitom Labs (or other Defendants) to create derivative works, which it did not (*i.e.*, did Defendants infringe the underlying work by creating a derivative work); (2) even if they had the right to create a derivative work, whether Defendants had the right to sell or transfer the derivative work (*i.e.*, did Defendants infringe the underlying work by distributing a derivative work); and (3) even if Defendants were licensed to create a derivative work (they were not), did they actually do so and which portion did Defendants modify (the PSBC Code could still be 95% plus AML Code). All of these issues are factually intensive and not proper for a motion to dismiss.

- AML seeks to address Defendants' mischaracterization of their cited case law that AML allegedly could not terminate a license for breach. While termination may not always be *automatic*, the non-breaching party can still terminate. Moreover, even if, *arguendo*, the license could not be terminated (which it could be), AML is still entitled to some relief because Defendants have admittedly stopped paying.

## II.   MEMORANDUM OF LAW

Sur-replies are discretional and may be permitted when "a valid reason for such additional briefing exists, such as where the movant raises new arguments in its reply brief." *First Specialty Ins. Corp. v. 633 Partners, Ltd.*, 300 Fed. Appx. 777, 788 (11th Cir. 2008). This District has continuously permitted sur-replies when valid reasons exist for the additional briefing such as new arguments being raised in a reply brief. *See, e.g., In re January 2021 Short Squeeze Trading Litigation*, 2024 WL 6068995, *1 (S.D. Fla. Feb. 5, 2024) (granting leave to file sur-reply to respond to new arguments raised in the Reply); *Bbig Real Estate, LLC v. Wilmington Trust, N.A.*, 2024 WL 5058139, *2 (S.D. Fla. Sept. 19, 2024) (granting leave to file sur-reply to address argument raised for the first time in Reply); *Curry v. Caribbean Cruise Line, Inc.*, 2011 WL 13579547, *2-3 (S.D. Fla. Aug. 31, 2011) (granting leave to file sur-reply to address new issues raised for the first time in Reply); *U.S. v. Hernandez*, 2023 WL 12082454, *1 (S.D. Fla. Jan. 20, 2023) (granting leave to file sur-reply to address new argument raised in Reply); *Signal Tech., Inc., v. PennSummit Tubular, LLC*, 2009 WL 2600357, *2 (S.D. Fla. Aug. 21, 2009) (granting leave to file sur-reply to address factual issues that the plaintiff claimed were new issues in the Reply); *Suarez v. City of Hollywood*, 2018 WL 11351535, *1 (S.D. Fla. July 3, 2018) (granting leave to file sur-reply); *U.S. v. Hernandez*, 2023 WL 12082454, *1 (S.D. Fla. Jan. 20, 2023) (granting leave to file sur-reply to address new argument raised in Reply).

Here, as explained above, Defendants raised new arguments in their Reply for the first time. AML respectfully requests leave to file a sur-reply to address the arguments identified herein, not to exceed four pages. Should the Court grant this Motion, AML requests five (5) business days to file the sur-reply.[4]

WHEREFORE, Plaintiff respectfully requests that the Court grant them leave to file a Sur-Reply, not to exceed four (4) pages, and for such other relief the Court deems just and proper.

---

[4] AML notes that this District has previously stricken sur-replies that were filed prior to leave being granted. Thus, AML is not attaching a proposed sur-reply to this Motion.

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 7.1(a)(3), I hereby certify that counsel for the movant has conferred with all parties who may be affected by the relief sought in this motion, including counsel for Defendants, and Defendants oppose the relief requested in this Motion.

**/s/ Joshua D. Martin**
Joshua D. Martin

Dated: February 11, 2026

Respectfully submitted,

By:  /s/ Joshua D. Martin
Joshua D. Martin
Florida Bar No. 028100
josh.martin@johnsonmartinlaw.com
Perry S. Clegg (*Pro Hac Vice*)
perry.clegg@johnsonmartinlaw.com
JOHNSON & MARTIN, P.A.
500 W. Cypress Creek Rd., Suite 430
Fort Lauderdale, Florida  33309
Telephone:  (954) 790-6699
Facsimile:  (954) 206-0017

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of this document has been filed through the Court's CM ECF electronic filing system this 11th day of February, 2026.

/s/ Joshua D. Martin
Joshua D. Martin, Esq.

5