# Exhibit 2

# CONSULTING AGREEMENT

This Consulting Agreement (this "Agreement") is made and entered into effective as of June 1, 2024 (the "Effective Date"), by and between PSBC, LLC a Delaware Limited Liability company (together with its affiliates, the "Company"), and Bitom Labs Inc. ("Consultant"), a Canadian Corporation. The Company and Consultant are collectively referred to herein as the "Parties" and individually as a "Party."

WHEREAS, the Company desires to engage Consultant to provide services to the Company and its subsidiaries, and Consultant is willing and able to provide such on the terms set forth herein.

NOW, THEREFORE, in consideration of the mutual covenants hereinafter set forth, the Company and Consultant agree as follows:

1.    SERVICES. The Company hereby engages Consultant, and Consultant hereby accepts such engagement, as an independent contractor to provide the services set forth in Schedule 1 (the "**Services**") to the Company or its affiliates on the terms and conditions set forth in this Agreement.

2.    TERM. The Term of this Agreement shall commence on the Effective Date and continue until either Party terminates this Agreement pursuant to Section 8 (the "Term").

3.    FEES, EQUIPMENT, AND EXPENSES.

3.1    As full compensation for the Services and the rights granted to the Company in this Agreement, the Company shall pay Consultant the compensation in accordance with the terms and scope set forth in Schedule 1. Consultant shall be solely responsible for all federal, state, and local taxes as set out in Section 4.2.

3.2    Unless otherwise agreed, Consultant shall provide its own equipment, tools, and other materials at its own expense, and shall be responsible for expenses incurred while performing the Services. Consultant shall furnish documentation substantiating any agreed expenses within a reasonable time after such expenses are incurred.

4.    RELATIONSHIP OF THE PARTIES.

4.1    Consultant is an independent contractor of the Company, and this Agreement shall not be construed to create any association, partnership, joint venture, employment, or agency relationship between Consultant and the Company for any purpose. Consultant shall have no authority (and shall not hold itself out as having authority) to bind the Company and Consultant shall not make any agreements or representations on the Company's behalf without the Company's prior written consent.

4.2    Consultant is responsible for all applicable taxes with respect to the Compensation paid under this Agreement, and all applicable taxes and required withholdings with respect to compensation provided to its employees. Consultant's employees and agents will not be entitled to participate in any plans, arrangements, or policies of the Company including, but not limited to, any plan arrangement or policy providing bonus, vacation, stock option, sick leave, disability, medical, retirement, profit sharing, or similar benefits for the

Company employees. No employee benefits or tax qualified plans provided to the Company employees shall be available to Consultant or Consultant's employees (even if Consultant's employees or agents is later determined to have been a common-law employee of the Company for any purpose). Consultant acknowledges that no insurance whatsoever, including Worker's Compensation insurance has been or will be obtained by the Company on behalf of Consultant or its employees.

5.    INTELLECTUAL PROPERTY RIGHTS.

5.1    Effective immediately upon Consultant's receipt of the full Payment Amount (as defined in Schedule 1), all results and proceeds of the Services performed under this Agreement (collectively, the "**Deliverables**") and all other writings, technology, inventions, discoveries, processes, techniques, methods, ideas, concepts, research, proposals, and materials, and all other work product of any nature whatsoever, that are created, prepared, produced, authored, edited, modified, conceived, or reduced to practice in the course of performing the Services or other work performed in connection with the Services or this Agreement (collectively, and including the Deliverables, "**Work Product**"), and all patents, copyrights, trademarks (together with the goodwill symbolized thereby), trade secrets, know- how, and other confidential or proprietary information, and other intellectual property rights (collectively "**Intellectual Property Rights**") therein, shall be owned exclusively by the Company. Consultant acknowledge and agree that any and all Work Product that may qualify as "work made for hire" as defined in the Copyright Act of 1976 (17 U.S.C. § 101) is hereby deemed "work made for hire" for the Company and all copyrights therein shall automatically and immediately vest in the Company. To the extent that any Work Product does not constitute "work made for hire," Consultant hereby irrevocably assigns to the Company and its successors and assigns, for no additional consideration, Consultant's entire right, title, and interest in and to such Work Product and all Intellectual Property Rights therein, including the right to sue, counterclaim, and recover for all past, present, and future infringement, misappropriation, or dilution thereof.

5.2    To the extent any copyrights are assigned under this Section 5, Consultant hereby irrevocably waives in favor of the Company, to the extent permitted by applicable law, any and all claims Consultant may now or hereafter have in any jurisdiction to all rights of paternity or attribution, integrity, disclosure, and withdrawal and any other rights that may be known as "moral rights" in relation to all Work Product to which the assigned copyrights apply.

5.3    Consultant shall make full and prompt written disclosure to the Company of any inventions or processes, as such terms are defined in 35 U.S.C. § 100, that constitute Work Product, whether or not such inventions or processes are patentable or protected as trade secrets. Consultant shall not disclose to any third party the nature or details of any such inventions or processes without the prior written consent of the Company. Any patent application for or application for registration of any Intellectual Property Rights in any Work Product that Consultant may file during the Term or at any time thereafter will belong to the Company, and Consultant hereby irrevocably assigns to the Company, for no additional consideration, Consultant's entire right, title, and interest in and to such application, all

Intellectual Property Rights disclosed or claimed therein, and any patent or registration issuing or resulting therefrom.

5.4  Upon the reasonable request of the Company, during and after the Term, Consultant shall promptly take such further actions, including execution and delivery of all appropriate instruments of conveyance, and provide such further cooperation, as may be reasonably necessary or desirable to assist the Company to apply for, prosecute, register, maintain, perfect, record, or enforce its rights in any Work Product and all Intellectual Property Rights therein. In the event the Company is unable, after reasonable effort, to obtain Consultant's signature on any such documents, Consultant hereby irrevocably designates and appoints the Company as Consultant's agent and attorney-in-fact, to act for and on Consultant's behalf solely to execute and file any such application or other document and do all other lawfully permitted acts to further the prosecution and issuance of patents, copyrights, or other intellectual property protection related to the Work Product with the same legal force and effect as if Consultant had executed them. Consultant agrees that this power of attorney is coupled with an interest.

5.5  Notwithstanding Section 5.1, to the extent that any of Consultant's pre-existing materials are incorporated in or combined with any Deliverable or otherwise necessary for the use or exploitation of any Work Product, Consultant hereby grants to the Company an irrevocable, worldwide, perpetual, royalty-free, non-exclusive license to use, publish, reproduce, perform, display, distribute, modify, prepare derivative works based upon, make, have made, sell, offer to sell, import, and otherwise exploit such preexisting materials and derivative works thereof. The Company may assign, transfer, and sublicense (through multiple tiers) such rights to others without Consultant's approval.

5.6  As between Consultant and the Company, the Company is, and will remain, the sole and exclusive owner of all right, title, and interest in and to any documents, specifications, data, know-how, methodologies, software, and other materials provided to Consultant by the Company ("**Company Materials**"), and all Intellectual Property Rights therein. Consultant has no right or license to reproduce or use any Company Materials except solely during the Term to the extent necessary to perform Consultant's obligations under this Agreement. All other rights in and to the Company Materials are expressly reserved by the Company. Consultant has no right or license to use the Company's trademarks, service marks, trade names, logos, symbols, or brand names.

5.7  Consultant shall require each of Consultant's employees and contractors to execute written agreements containing obligations of confidentiality and non-use and assignment of inventions and other work product consistent with the provisions of this Section 5 prior to such employee or contractor providing any Services under this Agreement.

5.8  Until such time as Consultant receives the full Payment Amount from Company, Consultant hereby grants to Company a nonexclusive, nonsublicensable, worldwide right and license to use, copy, and distribute the Product, subject to the limitations of Section 5.1. Except as set forth herein, Company shall obtain no rights under this Agreement in any designs, inventions, discoveries, improvements, computer programs, tools and utilities and other works of authorship conceived or made by Consultant prior to the effective date of this

3

148663224.3
PFS:009162.0001.3302458.1

Agreement (*"Pre-Existing Technology"*) or conceived or made on or after the effective date of this Agreement for third parties who are not a party to this Agreement, with the exception of the New Technology. Nothing in this Agreement shall be construed as a transfer or sale of rights except for the New Technology. Notwithstanding anything in this Agreement to the contrary, Consultant hereby grants to Company and its Affiliates a nonexclusive, perpetual, irrevocable, royalty-free, fully paid-up, worldwide right and license to make, have made, modify, use, distribute, sell, sublicense and otherwise exploit any Pre-Existing Technology that may be included or embodied in the Deliverables, solely as part of or in connection with the New Technology, including improvements thereto.

6.    CONFIDENTIALITY.

6.1    Consultant acknowledges that Consultant will have access to information that is treated as confidential and proprietary by the Company including without limitation trade secrets, technology and information pertaining to business operations and strategies, customers, vendors, suppliers, pricing, marketing, manufacturing, research and development, finances, personnel, other confidential and proprietary information or operations of the Company, its affiliates, or their suppliers or customers, in each case whether spoken, written, printed, electronic, or in any other form or medium (collectively, the "**Confidential Information**"). Any Confidential Information that Consultant accesses or develops in connection with the Services, including but not limited to any Work Product, shall be subject to the terms and conditions of this clause. Consultant agrees to treat all Confidential Information as strictly confidential, not to disclose Confidential Information or permit it to be disclosed, in whole or part, to any third party without the prior written consent of the Company in each instance, and not to use any Confidential Information for any purpose except as required in the performance of the Services. Consultant shall notify the Company immediately in the event Consultant becomes aware of any loss or disclosure of any Confidential Information.

6.2    Confidential Information shall not include information that: (a) is or becomes generally available to the public other than through Consultant's breach of this Agreement; or
(b) is communicated to Consultant by a third party that had no confidentiality obligations with respect to such information.

6.3    Nothing herein shall be construed to prevent disclosure of Confidential Information as may be required by applicable law or regulation, or pursuant to the valid order of a court of competent jurisdiction or an authorized government agency, provided that the disclosure does not exceed the extent of disclosure required by such law, regulation, or order. Consultant agrees to provide written notice of any such order to an authorized officer of the Company within two (2) business days of receiving such order, but in any event sufficiently in advance of making any disclosure to permit the Company to contest the order or seek confidentiality protections, as determined in the Company's sole discretion.

7.    REPRESENTATIONS AND WARRANTIES. Consultant represents and warrants to the Company that Consultant has the right to enter into this Agreement, to perform fully all of Consultant's obligations in this Agreement, and entering into this Agreement with the Company

and Consultant's performance of the Services does not and will not conflict with or result in any breach or default under any other agreement to which Consultant is a party.

8. <u>TERMINATION</u>.

8.1 Consultant or the Company may terminate this Agreement without cause upon 15 calendar days' written notice to the other Party. In the event of termination pursuant to this clause, the Company shall pay Consultant any compensation then due and payable for any Services completed up to and including the date of such termination.

8.2 Consultant or the Company may terminate this Agreement, effective immediately upon written notice to the other Party, if the other Party breaches this Agreement, and such breach is incapable of cure, or with respect to a breach capable of cure, the breaching Party does not cure such breach within 5 business days after receipt of written notice of such breach.

8.3 Upon expiration or termination of this Agreement for any reason, or at any other time upon the Company's written request, Consultant shall promptly after such expiration or termination: (a) deliver to the Company all Deliverables (whether complete or incomplete) and all materials, equipment, and other property provided for Consultant's use by the Company; (b) deliver to the Company all tangible documents and other media, including any copies, containing, reflecting, incorporating, or based on the Confidential Information; (c) permanently erase all of the Confidential Information from Consultant's computer systems; and (d) certify in writing to the Company that Consultant has complied with the requirements of this clause.

8.4 The terms and conditions of this clause and Sections 4-7, Sections 9-14, and any other provisions intended by its terms to survive the expiration or termination of this Agreement, shall survive the expiration or termination of this Agreement.

9. <u>OTHER BUSINESS ACTIVITIES</u>. The Company acknowledges that Consultant may provide consulting services and advice of the type contemplated by this Agreement to others, and that, subject to Section 6 and any other limitations set forth in in this Agreement, nothing contained herein shall be construed to limit or restrict Consultant in providing such services or advice to others.

10. <u>ASSIGNMENT</u>. Consultant shall not assign any rights or delegate or subcontract any obligations under this Agreement without the Company's prior written consent. Any assignment in violation of the foregoing shall be deemed null and void. The Company may freely assign its rights and obligations under this Agreement at any time. Subject to the limits on assignment stated above, this Agreement will inure to the benefit of, be binding on, and be enforceable against each of the Parties hereto and their respective successors and assigns.

11. <u>REMEDIES</u>. Consultant acknowledges that the Company competes with other businesses that are or could be located anywhere, and that the provisions of Section 6 are reasonable and necessary to protect the Company's business interests, are a material inducement for the Company to enter this Agreement and that a breach or threatened breach thereof would cause irreparable harm and significant injury to the Company. Accordingly, if Consultant breaches

or threatens to breach Section 6 of this Agreement, Consultant hereby acknowledges and agrees that money damages would not afford an adequate remedy and that the Company shall be entitled to a temporary or permanent injunction or other equitable relief restraining such breach or threatened breach from any court of competent jurisdiction without the necessity of showing any actual damages, and without the necessity of posting any bond or other security. Any equitable relief shall be in addition to, not in lieu of, legal remedies, monetary damages, or other available forms of relief.

12.  INDEMNIFICATION OBLIGATIONS.

12.1  Consultant will defend, indemnify and hold the Company, its directors, officers, employees, agents, representatives and assigns ("Company Indemnified Parties") harmless from and against any and all causes of action, liabilities, losses, costs, and expenses (including, without limitation, attorneys' fees and court costs), arising out of or resulting from any act or omission of the Consultant; provided, however, that Consultant will not have any such obligation to the extent of any negligent act or omission of the Company Indemnified Parties. Consultant further agrees to indemnify, defend, and hold each Company Indemnified Party harmless from and against any and all liability for employment taxes, including social security taxes, workers' compensation, disability, or unemployment compensation insurance, premiums or claims levied upon or attributable to the services rendered by Consultant, including but not limited to social security, worker's compensation, disability, unemployment, and withholding taxes, premiums and claims. Consultant's obligations pursuant to this Section will survive the termination of this Agreement.

12.2  The Company will defend, indemnify and hold Consultant harmless from and against any and all causes of action, liabilities, loses, costs, and expenses (including, without limitation, attorneys' fees and court costs), based upon, arising out of or resulting from any act or omission of the Company, its employees, or agents, in connection with this Agreement; provided, however, that the Company will not have any such obligation to the extent of any negligent act or omission of Consultant. The Company's obligations pursuant to this Section will survive the termination of this Agreement.

12.3  Each Party's obligation to indemnify the other Party hereunder will be conditioned upon (a) the Party against whom indemnification is sought being promptly notified of the claim in writing and being afforded the right to defend such claim; and (b) each Party cooperating reasonably and providing the Party against whom indemnification is sought with all necessary information and assistance in defending against such claim. Neither Party will be bound by or responsible for any costs or compromise incurred or agreed to by the other Party without such Party's prior written consent.

13.  GOVERNING LAW, JURISDICTION, AND VENUE. This Agreement and all related documents including all schedules attached hereto and all matters arising out of or relating to this Agreement and the Services provided hereunder, whether sounding in contract, tort, or statute, for all purposes shall be governed by and construed in accordance with the laws of the State of Florida (including its statutes of limitation and choice of law statutes), without giving effect to any conflict of laws principles that would cause the laws of any other jurisdiction to apply. Any action or proceeding by either of the Parties to enforce this Agreement shall be brought only in any state or

federal court located in or covering Miami-Dade County, Florida. The Parties hereby irrevocably submit to the exclusive jurisdiction of these courts and waive the defense of inconvenient forum to the maintenance of any action or proceeding in such venue.

14.    MISCELLANEOUS.

14.1    Consultant will at all times perform the Services in full compliance with all applicable local, state, and federal laws, ordinances, rules, regulations and administrative orders.

14.2    Consultant shall carry all required and appropriate insurance, at Consultant's expense, to cover any and all liability or injury resulting from Consultant's providing the Services and will provide the Company evidence of such coverage upon the Company's request.

14.3    On or before termination of the Term, Consultant shall provide and transfer any and all information (including, without limitation, any login information, passwords, and the like) necessary for the Company to continue the Services and/or access Deliverables or the Work Product.

14.4    All notices, requests, consents, claims, demands, waivers, and other communications hereunder (each, a "**Notice**") shall be in writing and addressed to the Parties at the addresses set forth on the signature of this Agreement (or to such other address that may be designated by a Party from time to time in accordance with this Section). All Notices shall be delivered by personal delivery, nationally recognized overnight courier (with all fees prepaid), email, facsimile (with confirmation of transmission), or certified or registered mail (in each case, return receipt requested, postage prepaid). Except as otherwise provided in this Agreement, a Notice is effective only if: (a) the Party has received the Notice; and (b) the Party giving the Notice has complied with the requirements of this Section.

14.5    This Agreement, together with any other documents incorporated herein by reference and related exhibits and schedules, constitutes the sole and entire agreement of the Parties to this Agreement with respect to the subject matter contained herein, and supersedes all prior and contemporaneous understandings, agreements, representations, and warranties, both written and oral, with respect to such subject matter.

14.6    This Agreement may only be amended, modified, or supplemented by an agreement in writing signed by each Party hereto, and any of the terms thereof may be waived, only by a written document signed by each Party to this Agreement or, in the case of waiver, by the Party or Parties waiving compliance.

14.7    If any term or provision of this Agreement is invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction. Whenever the masculine is used in this Agreement, the same shall include the feminine and whenever the feminine is used herein, the same shall include the masculine, where appropriate. Whenever the singular is used in this Agreement,

the same shall include the plural, and whenever the plural is used herein, the same shall include the singular, where appropriate.

14.8 The Parties may execute this Agreement in multiple counterparts, each of which constitutes an original, and all of which, collectively, constitute only one agreement. The signatures of all of the Parties need not appear on the same counterpart, and electronic delivery of an executed counterpart signature page is as effective as executing and delivering this Agreement in the presence of the other Parties to this Agreement.

**[Signature Page Follows]**

IN WITNESS WHEREOF, the parties hereto have executed this Consulting Agreement as of the Effective Date written above.

**COMPANY:**

PSBC, LLC

By: _____

Name: Jordan Mirch

Title:  Manager


PBSC LLC
P.O. Box 192135
Miami Beach, Florida, 33139
Attn: Manager

**CONSULTANT:**

Bitom Labs Inc.

By: _____

Name:  Ryan Pineo

Title: Director


BITOM LABS INC
2905-220 Burnhamthorpe RD W
Mississauga ON L5B4N4
Canada

Attn: Ryan Pineo

**SCHEDULE 1**

1.      Services.
**Scope of Work (collectively referred to herein as the "Product"):**

- Development of Bitcoin ATM software platform that is compatible with at least the following ATM machines:
    - Genmega Universal Kiosk 1
    - Genmega Universal Kiosk 2
    - American Kiosk
    - General Bytes

- The platform shall include a graphic user interface and all associated text shall be capable of being presented to the user in both the English and Salvadoran Spanish languages.
- Creation of platform infrastructure including servers within Amazon Web Services (AWS).
- Data migration of machine data, customer data, and transaction data from existing software platforms into the new platform.
- Pilot launch of new platform with a small number of machines.
- Full conversion of existing machines to the new platform.
- Company employee training and onboarding for use of new platform.

**Development Schedule:** Developer shall deliver the Product to Company on or by June 10, 2024.
**Ongoing Support – for 12 months after delivery of the Deliverables.**

- Management of platform infrastructure including servers and integration.
- Technical and operational support of the platform.
- Additional feature development as required.
- Support acceptance testing by Athena or Chivo and provide reasonable cooperation to Company in its performance of acceptance testing.

**Restrictions**

- Software platform may only be used for machines by Athena and Chivo or their affiliates operating under those brands.

2.      Time Commitment. Consultant shall perform the Services in a professional and workmanlike manner in accordance with generally recognized industry standards for similar services and shall devote sufficient resources and time to ensure that the Services are performed in a timely and reliable manner in accordance with the Company's needs.

3.      Compensation. As full consideration for the Services performed by Consultant, the Company shall compensate Consultant as follows:

- Payments equal to .5% of all USA sales of bitcoin on ATM transactions utilizing the software developed in accordance with this agreement up to a cap of $2,000,000, which payments shall be contingent upon completion of Services and receipt by the Company of completed Deliverables (the "Payment Amount").

- Consultant understands and acknowledges that, as the sole source of the payments it receives from Company pursuant to this Agreement is based upon royalties from the usage of the Product in ATM transactions, Company makes no warranty that the full Payment Amount, or any specific payment amounts, will be received by Consultant pursuant to this Agreement.

- All payments shall be paid in Bitcoin, and the amount of U.S. dollars paid for each transaction shall be calculated at the time of each transaction and according to the then-current CoinDesk Bitcoin Price Index (XBX).

11