**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Civil Action No.: 1:25-cv-24378-RAR**

AML SOFTWARE, INC.,

    Plaintiff,

vs.

ATHENA BITCOIN, INC., d/b/a ATHENA
BITCOIN GLOBAL, PSBC, LLC, JORDAN
MIRCH, BITOM LABS INC., and RYAN PINEO,

    Defendants.

_____/

## <u>DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR PRELIMINARY INJUNCTION</u>

1

Defendants, Athena Bitcoin, Inc. d/b/a Athena Bitcoin Global (**"Athena"**), PSBC, LLC (**"PSBC"**), Jordan Mirch (**"Mirch"**) (Athena, PSBC, and Mirch, collectively, the **"PSBC Defendants"**), Bitom Labs Inc. (**"Bitom"**), and Ryan Pineo (**"Pineo"**) (all defendants collectively, the **"Defendants"**), hereby respectfully submit their Response in opposition to Plaintiff, AML Software, Inc.'s (**"AML"**) Renewed Motion for Preliminary Injunction (the **"Motion"**). In support thereof, Defendants state as follows:

## I.      Introduction

Prior to the initiation of any discovery in this matter, AML asks this Court to grant it all of the ultimate relief it seeks in its Amended Complaint – a declaration that Defendants have no rights in either the software owned by AML (the **"AML Source Code"**) or the derivative version of that software utilized in Athena's more than 4,000 bitcoin machines (the **"PSBC Source Code"**); enjoining Defendants from using not only the AML Source Code, but the PSBC Source Code; and ordering Pineo to account for, and turn over, license fees from third parties. Mot., 21. AML further asks the Court to grant this sweeping relief – relief that, by design, will put Athena out of business – with only a minimal bond required. AML has not met its burden to obtain a preliminary injunction or such overbroad injunctive relief.

To be entitled to a preliminary injunction, AML bears the burden of demonstrating a substantial likelihood of success on the merits; irreparable injury; that the threatened injury outweighs the damage the injunction may cause Defendants; and that the injunction would not be adverse to the public interest. It does not meet its burden on *any* of these elements. First, AML is not likely to succeed on the merits of its claims. AML granted an irrevocable license to the PSBC Defendants to create the PSBC Source Code. The scope of this license is established by Pineo, who was the sole person with authority to grant it (and did) and confirmed by the documentary evidence, including the Consulting Agreement between PSBC and Bitom (the **"PSBC-Bitom Consulting Agreement"** or **"Consulting Agreement"**) and Development Services Agreement between Athena and PSBC (the **"Athena-PSBC Development Agreement"** or **"Development Agreement"**) attached to the Motion. Mot., Ex. 2 and 3. AML similarly cannot demonstrate a likelihood of success on its breach of fiduciary duty claim against Pineo. AML has failed to sufficiently identify any withheld license payments, as necessary to succeed on a conversion claim; and the facts asserted in its pleading and the Declaration of Meraban (Mot., Ex. 1) confirm that the

transaction was approved and encouraged by shareholder Sonny Meraban (**"Meraban"**) and protected by the business judgment rule.

Second, AML has failed to identify any irreparable harm. The reputational damage it claims it "could" face is too remote and speculative to carry its burden, as a matter of law. Any other damages can be adequately compensated for by monetary damages. Additionally, AML's delays in bringing its claims and this Motion confirm that any harm is not irreparable: it waited eleven months from allegedly learning of all relevant facts to register its copyright and file this lawsuit, and an additional six months after filing before renewing the present Motion.

Third, AML's argument that its harm outweighs the damage that would be imposed on Defendants is woefully inaccurate. Athena uses the PSBC Source Code to operate more than 4,000 Bitcoin ATMS, both on behalf of itself, numerous third-party Bitcoin ATM owners, and a Central American government. AML's requested relief, to enjoin Athena from using the PSBC Source Code, would shut down the operations of Athena's entire fleet of Bitcoin ATMS, immediately putting Athena, and the third-party Bitcoin ATM operators whose machines it operates, out of business. *See* Affidavit of Athena Chief Executive Officer, Matias Goldenhorn attached hereto as Exhibit A at ¶¶4-5. As of the filing of this Response, Athena, a publicly traded company, has a market cap of $17,000,000. If the Court granted Plaintiff's relief herein, the next day its market cap would be zero. By contrast, AML has not demonstrated any irreparable harm.

Finally, AML has provided no support for its claim that the proposed injunction would serve the public interest. AML's failure to carry its burden on any one of the elements is fatal to its request for injunctive relief but here it fails to satisfy all four elements.

Should this Court be inclined to grant AML's Motion, its request for a "minimal bond" should be denied; in light of the serious harm such an injunction would pose on Athena, AML should be required to post a bond equal to the revenue that Athena stands to lose.

For the reasons stated in further detail herein, AML's request for injunctive relief should be denied in its entirety.

## II.     Statement of Facts

Since 2023, AML has granted numerous Bitcoin operators a license to the AML Source Code through Pineo's company, Defendant Bitom Labs Inc. ("Bitom"). Affidavit of Ryan Pineo (**"Pineo Aff."**), attached as Exhibit B, ¶¶3-4. Notably, it was Meraban, not Pineo, who pushed to

license the AML Source Code to Athena (or in Meraban's words, "sell a copy"). *Id.*, ¶¶4-6; Whatsapp messages between Meraban and Pineo, attached to Pineo Aff. as Ex. 2-4.

Meraban was desperate to monetize the AML license and sell it, "If u can move a copy I would do it bc I'm saying who knows how much longer this stuff can last." Ex. 1 to Ex. B, pg. 10, "you should pitch Athena for a sale, 2.5" *Id.* at Ex. 4. "I wanna get Athena a copy, "How can we sell Athena a copy", "Sell Athena a copy for 2M". *Id.* at Ex. 5. This is what Pineo did. On June 18, 2024, Pineo sent Meraban a copy of the PSBC-Bitom Consulting Agreement whereby the right to use, sub-license and make derivative works from the AML software was granted. *See* Ex. 7, Ex. 11.

Thereafter, pursuant to the PSBC-Bitom Consulting Agreement, PSBC developed a new software for use by Athena, the PSBC Source Code. Pineo Aff., ¶8. Pursuant to the Consulting Agreement, PSBC was granted a nonexclusive, perpetual, irrevocable, royalty-free, fully paid-up, worldwide right and license to make, have made, modify, use, distribute, sell, sublicense, and otherwise exploit any AML Code that may be included or embodied in the PSBC Source Code. *Id.*, ¶9. PSBC would then sell the PSBC Source Code to Athena for use in its Bitcoin ATMs. *Id.* **Fifteen months before AML filed this lawsuit, Meraban was informed about this transaction and was provided a copy of the PSBC-Bitom Consulting Agreement by Pineo.** Pineo Aff., ¶11 and at Ex. 7. AML and Bitom were to be paid $2 million for this license, the same amount Pineo and Meraban previously discussed, and split between the two of them. Pineo Aff., ¶10. When Pineo asked Meraban to formally document the arrangement between AML and Bitom for this transaction, Meraban told him it was not necessary **because as President of AML, Pineo already had all rights to license the AML Source Code.** *Id.* at ¶12 and Ex. 8.

Meraban claims that he did not understand the transaction when it was fully presented to him in June of 2024; however, he admits he knew all the facts giving rise to this lawsuit in October 2024. Meraban Dec., ¶¶11-12, 15. Yet AML did not attempt to terminate the license or file an infringement claim at that time. Instead, AML (and Meraban personally) continued to collect payments from Defendants' use of the AML Source Code until September 2025. *Id.*, ¶17.

Fifteen months after the license was granted, and eleven months after Meraban admittedly knew of all the facts, AML decided to pursue an infringement claim. AML registered its copyright on September 9, 2025. Certificate of Registration, attached to Amended Complaint (Dkt. #6) as Exhibit 1. Two weeks after that, on September 23, 2025, AML filed this lawsuit. By this time,

AML had received $892,000 of the total $1,000,000 it was due to receive under the license. Pineo Aff., ¶¶14-15.

### III.  Argument.

#### A.  Standard for Preliminary Injunction.

AML has not met its burden to establish a right to preliminary injunctive relief. "A district court may grant injunctive relief only if the moving party shows that: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000). "The preliminary injunction is an extraordinary and drastic remedy not to be granted until the movant 'clearly carries the burden of persuasion' as to the four prerequisites." *Ne. Florida Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990) (citations omitted). "The burden of persuasion in all of the four requirements is at all times upon the plaintiff." *Id.* (citations omitted). "If [the movant] fails to carry its burden as to any one of the elements, the Court must deny the Motion." *FHR TB, LLC v. TB Isle Resort, LP.*, 865 F. Supp. 2d 1172, 1191–92 (S.D. Fla. 2011).

"Preliminary injunctions 'serve to maintain the status quo until a final decision on a matter can be reached.'" *Tuna Family Mgmt, Inc. v. All Tr. Mgmt., Inc.*, No. 20-14017-CIV-SMM, 2021 U.S. Dist. LEXIS 197358, at *10 (S.D. Fla. Oct. 13, 2021), citing *United States v. DBB, Inc.*, 180 F.3d 1277, 1282 (11th Cir. 1999); *see also Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974) (explaining that the focus in maintaining the status quo is on preventing irreparable injury). But the relief sought in Plaintiff's Motion is not merely to maintain the status quo; it would enjoin Defendants' use of the AML Source Code and PSBC Source Code, and require Defendants to provide an accounting for all payments and revenues received from unpled licensees. Pl.'s Mot. at 2. "But when the injunction would force a party to act, and not simply maintain the status quo, it becomes mandatory." *Tuna Family Mgmt, Inc.,* No. 20-14017-CIV-SMM, 2021 U.S. Dist. LEXIS 197358, at *11. "A moving party's burden is heightened with respect to a mandatory or affirmative injunction." *Id.* (citing *Berber v. Wells Fargo Bank, N.A.*, No. 16-24918-CIV, 2017 U.S. Dist. LEXIS 85883, 2017 WL 2417960, at *3 (S.D. Fla. June 2, 2017), report and recommendation adopted, No. 16-24918-CIV, 2018 U.S. Dist. LEXIS 234395, 2018

WL 10436231 (S.D. Fla. Mar. 13, 2018), aff'd, 760 F. App'x 684 (11th Cir. 2019)). "Indeed, a movant seeking a mandatory injunction 'must make a 'clear' showing on each of the four elements of the injunction' rather than merely by a preponderance of the evidence. *Id.* (citing *Gayle*, 2020 U.S. Dist. LEXIS 71953, 2020 WL 1949737 at 22). "Given this perspective, courts generally disfavor mandatory injunctions." *Id.* at *11-12.

AML's claims rest on the assertion that it owns copyright in the AML Source Code and that Defendants improperly transferred those rights without authorization. However, AML's likelihood of success is undermined by several fundamental deficiencies in its claims, as thoroughly outlined in Defendants' Motion to Dismiss, Reply and Sur-Sur Reply, arguments which Defendants incorporate into this opposition. Apart from failing to show a likelihood of success on the merits, AML also fails to demonstrate by a preponderance of the evidence, much less a "clear" showing, that it will suffer irreparable harm absent an injunction. "An injury is 'irreparable' only if it cannot be undone through monetary remedies. *Ne. Fla. Chapter of Ass'n of Gen. Contractors*, 896 F.2d at 1285. "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Id.* Here, AML seeks monetary damages. *See* Am. Compl., Dkt. #6, ¶66; Mot. at 21 ("ordering Pineo to turn over AML's 50% share of said license fees…"). AML also fails to make a clear showing that the balance of harms weighs in favor of injunctive relief, or that the public interest favors an injunction. Because the factors are conjunctive, failure to carry the burden on any one factor requires denial. *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223 (11th Cir. 2005). AML fails to meet its burden as to any element of obtaining injunctive relief and its Motion should be denied.

**B.  AML cannot demonstrate a likelihood of success on the merits.**

**i.   AML is not likely to succeed on its copyright infringement claim because it granted a license to the Defendants.**

AML has not shown that it is likely to succeed on the merits of its copyright infringement claim in light of the license to the AML Source Code that, it admits, was granted to PSBC. "The existence of a license is an affirmative defense to copyright infringement." *Yellow Pages Photos, Inc. v. YP, LLC*, 856 Fed. Appx. 846, 855 (11th Cir. 2021) (affirming summary judgment for defendants' on plaintiff's copyright infringement claim). "A copyright owner waives the right to sue, however, for uses of copyrighted material that are authorized by a non-exclusive license." *Great Minds v. Fedex Office & Print Services, Inc.*, 886 F.3d 91, 94 (2d Cir. 2018) (affirming

dismissal of copyright infringement claim); *see also MidlevelU, Inc. v. ACI Info. Group*, 989 F.3d 1205, 1216 (11th Cir. 2021) (holding that a copyright owner who grants a nonexclusive license waives the right to sue for infringement).

The parties agree that Defendants were granted a license to use the AML Source Code. Meraban Dec., ¶10; Pineo Aff., ¶9. There is no dispute that Meraban did not grant the subject license; Pineo did, the then-President and director of AML. Am. Compl., Dkt. #6, ¶¶16, 74, 103; Pineo Aff., ¶2. As Pineo avers, the license that was granted was nonexclusive, irrevocable, and included the right to modify the AML Source Code. Pineo Aff., ¶9.

To combat this fact, AML argues that Pineo acted outside the scope of his authority in granting the above-described license. Mot., 13. The communications between Meraban and Pineo confirm that his authority was not limited, as AML now claims. In speaking with Pineo about his licensing authority, Meraban stated:

Sonny Meraban: honestly I think its worst for me to sign stuff

Sonny Meraban: u are already the president also of AML

Sonny Meraban: u have all the rights tbh

Pineo Aff., Ex. 8 at p. 3 (cleaned up).

The evidence very clearly demonstrates that Pineo had the actual authority to grant an irrevocable, unlimited license to Defendants. Assuming, *arguendo,* Pineo's authority was limited, he had apparent authority to grant the license on behalf of AML, an Illinois corporation, as its President and sole director. *See Krantz v. Oak Park Tr. & Sav. Bank*, 147 N.E.2d 881, 882 (Ill. App. Ct. 1958); *see also IFC Credit Corp. v. Nuovo Pasta Co., Inc.*, 815 F. Supp. 268, 271 (N.D. Ill. 1993) ("Finochiaro, as president of Nuovo Pasta, had presumptive authority to act on behalf of the corporation."). AML's argument in this regard misses the mark: it argues Pineo could not claim apparent authority because his authority derived from Meraban. Pl.'s Mot., at 13. Pineo does not "claim" apparent authority; he *had* apparent authority, which the PSBC Defendants were entitled to rely on. *Krantz*, 147 N.E.2d at 882; *IFC Credit Corp.*, 815 F. Supp. at 271.

AML also alleges without any evidentiary support that Bitom did not develop the AML Source Code for PSBC but provided an exact copy of it to PSBC. Mot., 15. AML's argument is contradicted by Pineo's affidavit and the Bitom-PSBC Consulting Agreement. As averred, Bitom developed a new software from the AML Source Code – the PSBC Source Code – which is distinct from the AML Source Code. Pineo Aff., ¶8. "Such a work—if it is non-infringing and sufficiently

7

original—qualifies for a separate copyright, although this copyright does not protect the preexisting material employed in the derivative work." *Montgomery v. Noga*, 168 F.3d 1282, 1290 (11th Cir. 1999). "The copyright in such [derivative] work is independent of, and does not affect or enlarge the scope, duration, ownership, or subsistence of, any copyright protection in the preexisting material." 17 U.S.C. §103.

The Bitom-PSBC Consulting Agreement contemplated the development of a new software. The Bitom-PSBC Consulting Agreement provides, "Nothing in this Agreement shall be construed as a transfer or sale of rights *except* for the New Technology". Mot., Ex. 2, §5.8 (emphasis added). The New Technology explicitly excludes Pre-Existing Technology. *Id.* Similar language exists in the Athena-PSBC Development Agreement. Mot. at Ex. 3, §3.2. Additionally, both agreements contemplate, in Schedule 1 to the Consulting Agreement and Exhibit A to the Development Agreement, that a new software platform would be developed. *Id.* Because the only credible evidence before the Court demonstrates the existence of an irrevocable, non-exclusive license to use the AML Source Code, AML falls short of meeting its heightened burden of demonstrating a substantial likelihood of success on its copyright infringement claim. *Supra, Berber.*

### ii. The evidence confirms that the license granted to Defendants is irrevocable.

As Pineo avers, the license granted to Defendants was irrevocable and granted to Defendants with the express knowledge it would be used to create a derivative software for use by Athena. Pineo Aff., ¶¶8-9. Meraban knew about the scope of the license at the time of the transaction when Pineo provided him a copy of PSBC-Bitom Consulting Agreement and told him the details of the transaction. *Id.*, ¶11 and Ex. 7.

The cases cited by AML for its argument that this license was revocable are inapposite. Mot., 16. *Fokiss, Inc. v. TLM Glob., LLC*, 2025 WL 353923, at *6 (S.D. Fla. Jan. 31, 2025); *Hermosilla v. Coca-Cola Co.*, 717 F. Supp. 2d 1297, 1303 (S.D. Fla. 2010), *aff'd sub nom. Hermosilla v. Coca-Cola Co.*, 419 F. App'x 917 (11th Cir. 2011); *Odom v. Navarro*, No. 09-21480-CIV, 2010 WL 11505459, at *4 (S.D. Fla. Mar. 11, 2010). In *Odom*, the court held that an implied license was revocable where the plaintiff received no payment for the work at issue. *Odom*, 2010 WL 11505459 at *1, 4. Similarly, the decision in *Hermosilla* was based upon the fact that the plaintiff had not accepted *any* consideration for his work. *Hermosilla*, 717 F. Supp. 2d at 1303. By comparison, there is no question that AML has received substantial payment for Defendants' use of the AML Source Code. Am. Compl., Dkt. #6, ¶¶10, 47-38, 67. In *Fokiss*, by contrast, the court

did not find that the license at issue was revocable for lack of consideration – in fact, the ruling expressly states that there was no dispute that consideration *had* been exchanged. However, defendant terminated the license when plaintiff breached restrictions on the scope of the license that were placed *at the time* the work was delivered. *Fokiss*, 2025 WL 353923, at *6.

As the Court stated in *Hermosilla*, a nonexclusive license "is revocable unless and until consideration is accepted by the licensor." *Hermosilla*, 717 F. Supp,. 2d at 1303. There is no dispute that AML received substantial consideration for this license, rendering it irrevocable. Am. Compl., Dkt. #6, ¶¶10, 47-38, 67; Meraban Dec., ¶17; Pineo Aff., ¶¶14-15.

### iii. AML did not have the right to terminate the license for non-payment or by filing suit.

The license is irrevocable; but even assuming arguendo it were not, AML could not succeed on its position that the license was terminable for non-payment. "[N]ot every breach permits the nonbreaching party to cease performance." *JF & LN, LLC v. Royal Oldsmobile-GMC Trucks Co.*, 292 So. 3d 500, 509 (Fla. 2d DCA 2020). Only a material breach confers this right. *Jacob Maxwell, Inc. v. Veeck*, 110 F.3d 749, 753 (11th Cir. 1997). The evidence confirms that AML received $892,000 of the $1,000,000 it was owed under the license – nearly 90%. Pineo Aff., ¶¶14-15. While AML may have a claim for breach of contract for the amount it contends remains unpaid, this does not give AML the right to unilaterally revoke a license for which it has received substantial consideration.

AML's position, that it could unilaterally terminate by filing this lawsuit, additionally fails. In *Hermosilla*, the sole case upon which AML relies for this point, the court's ruling was based upon the fact that the plaintiff had not accepted *any* consideration for his work. *Id*., at 1303 The same is not true here: there is no dispute that AML has received *substantial* consideration for Defendants' use of the AML Source Code. Am Compl., Dkt. #6, ¶67. Where consideration is given for a license, Circuit Courts have rejected litigant's attempts to terminate bilateral license agreements by filing suit, holding that it is "tantamount to an argument that it had a unilateral right of rescission without notice—an argument entirely inconsistent with the existence of a contract between the parties." *Lulirama Ltd., Inc. v. Axcess Broad. Servs.*, 128 F.3d 872, 882 (5th Cir. 1997). "If Lulirama had the ability to terminate the license at will, then no contract could exist because Lulirama's obligation under the contract would be illusory." *Id*. The same is particularly true here, where AML sat back and collected payments for nearly a year after the time it admits it became aware of all of the facts. Meraban Dec., ¶15.

### iv. AML cannot demonstrate a likelihood of success on the claim for breach of fiduciary duty against Pineo.

First, AML's allegations regarding withheld payments are impermissibly vague and conclusory. AML's central allegation is that Pineo "withheld" license payments from unidentified licensees. However, this bare assertion fails to plead facts sufficient to make the claim plausible, not merely possible. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007). Conclusory allegations unsupported by factual content are plainly insufficient to state a claim, much less sufficient to demonstrate a likelihood of success on the merits of a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009).

AML has failed to identify the specific licensees who allegedly made payments, the amounts or timing of any such payments, or the contractual basis establishing that these payments were owed to AML rather than another entity. Most critically, AML has not pleaded any facts showing Pineo's personal receipt and misappropriation of specific funds. Without these essential factual allegations, AML's claim amounts to nothing more than a speculative assertion that wrongdoing occurred. AML's failure to provide these basic details renders its breach of fiduciary duty claim implausible and insufficient as a matter of law.

Second, AML's own pleadings contradict its allegations of unauthorized conduct. Specifically, AML alleges that Meraban knew of, approved, and encouraged the transactions at issue. Am. Compl. ¶¶44, 45. According to AML's own pleadings, Meraban expressly agreed to a revocable, non-exclusive license structure because AML was in "dire need of revenue/funds." Am. Compl. ¶44. These admissions are fatal to AML's breach of fiduciary duty claim. AML cannot plausibly allege that Pineo engaged in unauthorized conduct while simultaneously pleading that Meraban had knowledge of, approved, and ratified the very same transactions.

Third, AML's claim of breach of fiduciary duty cannot succeed because the business judgment rule bars claims based on good-faith, informed corporate decisions undertaken to meet corporate needs. *Munford v. Valuation Resch. Corp. (Inre Munford, Inc.)*, 98 F.3d 604, 611 (11th Cir. 1996). The pleadings establish that Pineo's actions – entering a license agreement with Defendants – were informed business decisions made with the knowledge and approval of the shareholder trustee during a period of financial distress. Indeed, AML alleges that the transaction structure was implemented because AML was in "dire need of revenue/funds." Am. Compl. ¶44. Pineo kept Meraban apprised of this transaction, including by providing him with the PSBC-Bitom Consulting Agreement to review. Pineo Aff., Ex. 7. Meraban expressed his enthusiastic

endorsement of the transaction structure, stating "'[w]ould love to get 5 more of these deals. Even if they dont [sic] buy it and just pay is good. thats [sic] 75k a month.'" Am. Compl. ¶45. These facts demonstrate that Pineo was acting to meet legitimate corporate needs with the informed consent of the company's controlling shareholder.

Finally, AML's claim for breach of fiduciary duty independently fails on proximate harm. AML's own pleadings undermine any claim of damages. AML admits that the transactions generated substantial revenue and that the transaction structure was accepted specifically because AML needed funds. These admissions demonstrate that AML benefited from the very transactions it now challenges.

Ultimately, AML's own pleadings demonstrate that Pineo's conduct was part of an authorized revenue-generating strategy undertaken with full shareholder knowledge and approval, and thus, AML's breach of fiduciary duty cannot succeed.

### C. AML will suffer no irreparable harm if the injunction is denied.

The gravamen of AML's Amended Complaint is lost revenue. Both its pleading and the Motion seek money damages. Am. Compl., Dkt. #6, Prayer for Relief at ¶¶G, H, and J; Mot., 21. "Significantly, even if Plaintiffs establish a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000). "Preliminary injunctive relief is also improper without a finding of likelihood of an actual and imminent irreparable injury. To satisfy this requirement a movant must show a significant threat of irreparable harm, and not merely rely on remote or speculative injuries." *Menudo Int'l, LLC v. In Miami Prod., LLC*, No. 17-21559-CIV, 2017 WL 4919222, at *3 (S.D. Fla. Oct. 31, 2017) (citation omitted) (collecting cases holding that injunction is inappropriate where movant fails to demonstrate harm beyond remote or speculative injuries).

AML argues that it could be irreparably harmed if its software would be distributed to third parties; but provides no evidentiary fact that this is occurring or is an actual and imminent threat and no legal support for why this harm would be irreparable. Because the alleged harm is speculative, it is an insufficient basis for a preliminary injunction. AML does not cite to any actual, imminent harm, but conjecture that it could be injured if Defendants distribute the AML Source Code to third parties. Pl.'s Mot., at 19. AML provides no facts demonstrating that its software has been distributed, or even a basis to believe it is in imminent danger of being distributed. Such

11

speculative harm is routinely rejected by courts. *See IT Strategies Group, Inc. v. Allday Consulting Group, L.L.C.*, 975 F. Supp. 2d 1267, 1280 (S.D. Fla. 2013) (argument that customers could visit defendants' website, find plaintiff's product undesirable, and not purchase the product was to speculative and remote to support a finding of irreparable injury). Even if it were a cognizable injury, it could be remedied by payment of fees stemming from any authorized use or distribution. "An injury is 'irreparable' only if it cannot be undone through monetary remedies." *Ne. Florida Chapter of Ass'n of Gen. Contractors of Am.*, 896 F.2d at 1285 (denying preliminary injunction where alleged damage to plaintiff was chiefly economic). As AML alleges, its damages are monetary. Pl.'s Mot. at 20 ("Should Defendants be allowed…to continue to use the AML Software without even paying the license fees that Defendants acknowledge were owed, AML will suffer irreparable losses as discussed.").

AML also argues that its reputation could be harmed due to an unrelated lawsuit against Athena. *Id*. at 19. Neither the press release linked in the Motion nor the complaint against Athena mention the software used by Athena – much less make any mention of AML. This is a far cry from the case Plaintiff relied upon, *Fokiss, Inc.*, No. 24-CV-14096-KMM, 2025 WL 353923. In *Fokiss*, the court addressed reputational harm stemming from the counter-defendant's, a digital media organization, posting the counter-plaintiff's intellectual property on its social media alongside its own "extreme and offensive rhetoric". *Fokiss*, 2025 WL 353923, at *6. The alleged reputational injury therefore arose from the association of the plaintiff's brand with inflammatory public messaging. Here, by contrast, there is no evidence cited in either the Motion or Meraban's Declaration of any association between AML and a lawsuit against Athena in which it is not named, referenced, or even implied to be involved. This sort of speculative reputational harm is insufficient. *See Seiko Kabushiki Kaisha v. Swiss Watch Intern., Inc.*, 188 F. Supp. 2d 1350, 1355 (S.D. Fla. 2002) (denying motion for preliminary injunction where any threat to plaintiff's goodwill and reputation stemming from defendants' sale of plaintiff's watches in allegedly inferior watch boxes was minimal).

Moreover, neither AML's Amended Complaint nor Renewed Motion for Preliminary Injunction contain any specific allegations identifying any lost customers, damaged relationships, or reputational injury caused by Defendants' alleged conduct. Conclusory assertions of reputational harm are insufficient to establish irreparable injury. *See Siegel*, 234 F.3d at 1176-77 (*en banc*) (holding that irreparable harm must be "actual and imminent"; speculative or conclusory

allegations of harm cannot support preliminary injunctive relief). In fact, AML's own pleadings undermine any claim that Athena's use of the software inherently harms AML's reputation. AML alleges that its principal, Sonny Meraban, encouraged the licensing arrangement with Athena, and additional transactions of the same kind, because "AML was in dire need of revenue/funds." Am. Compl. ¶¶44-45, 47. AML further alleges that Pineo, while serving as AML's President, licensed the software to Athena pursuant to that arrangement. *Id.* Having approved and benefited from the licensing relationship with Athena at the outset, AML cannot now plausibly claim that the continued use of the same licensed software by Athena constitutes reputational harm.

AML's assertions regarding alleged withholding of license payments fails as well. Pl.'s Mot. at 19-20. AML fails to provide sufficient facts regarding the number or amount of license payments Pineo is purportedly withholding, as necessary to support its assertion that not receiving these payments will drive it to insolvency. Importantly, while licensing may be AML's sole source of revenue, AML still has the ability during the pendency of this litigation to do just that: it still has the AML Source Code and has the ability to license it to as many operators as it wishes. AML therefore remains the copyright holder and retains the ability to control and exploit its intellectual property. The fact that AML disputes the scope or continuation of a particular license agreement with Defendants does not establish that AML has lost control the right or ability to commercialize that software in the marketplace with other potential licensees. The remaining harm is entirely economic and by definition, not irreparable. *Ne. Florida Chapter of Ass'n of Gen. Contractors of Am.*, 896 F.2d at 1285. AML's own pleadings confirm that it retains ownership of the AML Software. Am. Compl. at ¶¶7, 83. Rather, the alleged injury concerns only the continuation of a disputed licensing relationship, an issue that, if AML ultimately prevails on, can be remedied through monetary damages.

For these reasons, AML's unsupported assertions of reputational and lost licensing fees does not satisfy the irreparable injury requirement.

### i. AML's delays in bringing both the lawsuit and the Motion undercut its claim that it will suffer irreparable harm.

AML's significant delay in pursuing injunctive relief confirms that any harm it alleges it may suffer is not irreparable. "A delay in seeking a preliminary injunction of even only a few months—though not necessarily fatal—militates against a finding of irreparable harm." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016). "As such, two time periods are relevant in determining whether a plaintiff acts promptly in seeking judicial relief: (1) a plaintiff

cannot delay in filing a complaint after discovering a potential infringer, and (2) a plaintiff must move quickly in filing a motion for a preliminary injunction once a complaint has been filed." *Menudo Int'l, LLC v. In Miami Prod., LLC*, No. 17-21559-CIV, 2017 WL 4919222, at \*5 (S.D. Fla. Oct. 31, 2017).

AML's delays in seeking injunctive relief in this matter are substantial. As AML admits, it knew about all facts giving rise to its copyright infringement claims in October 2024 (but likely in June of 2024). Meraban Dec., ¶15; Pineo Aff., ¶11 and Ex. 7. Despite this, AML did nothing and continued to collect payments for Defendants' use of the AML Source Code until it filed this lawsuit in September 2025, nearly a year later. Meraban Dec., ¶17. Nor did AML diligently put itself in a position to protect its intellectual property rights by registering the copyright effective September 9, 2025. Certificate of Registration, attached to Amended Complaint (Dkt. #6) as Exhibit 1. "In order to bring an action for copyright infringement, however, the author must first register the copyright." *Montgomery v. Noga*, 168 F.3d 1282, 1288 (11th Cir. 1999); *see also Menudo Int'l, LLC*, at \*6 (holding that plaintiff did not demonstrate irreparable harm where it could not explain one year delay in registering trademarks or why it took "an extended period of time" to learn it had suffered harm due to defendants' alleged infringement).

Even after filing this lawsuit, AML's delays persisted. AML first filed its motion for a preliminary injunction on November 26, 2025 more than two months after if it initiated this lawsuit (Dkt. #21), which was stricken without prejudice because Pineo and Bitom had not yet been served (Dkt. #22). Pineo and Bitom were served December 1, 2025. Dkt. #24, Dkt. #25. Despite this, AML waited nearly three months – until the last day of February – to renew its motion for a preliminary injunction. The only explanation provided is that AML was "forced" to respond to both a Motion to Dismiss and Motion for Sanctions. Mot., 11. AML's responses were filed January 21 and January 16, respectively; its reasoning does not explain why it could not re-file its original motion in December, after perfecting service, or even in January after it finished its other briefs – particularly where it claims it has been deprived of its sole source of revenue since September 2025. Meraban Dec., ¶21.

These delays, both prior to and after filing the lawsuit, confirm that AML has suffered no irreparable harm and the preliminary injunction should be denied. *Menudo Int'l, LLC*, at \*4-6 (denying preliminary injunction where plaintiff waited eleven months after learning of infringement to file complaint and three additional months before moving for preliminary

injunction); *Seiko Kabushiki Kaisha*, 188 F. Supp. 2d at 1356  (denying preliminary injunction where plaintiff waited a year after learning of infringement before filing lawsuit); *Wreal, LLC*, 840 F.3d at 1248 (denying preliminary injunction where plaintiff waited five months after filing lawsuit to file motion for injunction); *CAR BODY LAB INC., Plaintiff, v. LITHIA MOTORS, INC., Defendant.*, No. 21-CV-21484, 2021 WL 2652774, at *9 (S.D. Fla. June 21, 2021), *report and recommendation adopted sub nom. Car Body Lab, Inc. v. Lithia Motors, Inc.*, No. 21-21484-CIV, 2021 WL 3404040 (S.D. Fla. Aug. 4, 2021) (recommending denial of preliminary injunction where there was an eight month gap between learning of infringement and filing motion); *Pliteq, Inc. v. Mostafa*, 775 F. Supp. 3d 1231, 1260 (S.D. Fla. 2025) (two month delay between learning that former employee downloaded data and filing lawsuit and six month delay in filing motion for preliminary injunction after filing suit weighed against finding of irreparable harm).

### D. The harm to Defendants if an injunction is granted will substantially outweigh any harm to AML.

The balance of equities strongly favors Defendants. AML argues that the balance of harms favors an injunction because AML allegedly expended substantial resources developing the AML Software and because Defendants purportedly lack ownership rights in the software or any derivative works. That argument fails for several reasons.

The harm to Defendants from the requested injunction would be substantial. AML seeks relief that would require Defendants to cease using derivative work of a software system that is necessary for the operation of over 4000 Bitcoin ATMs. *See* Ex. A, at ¶4. The impact of this cannot be overstated: the 4,000 Bitcoin ATMS that Athena operates, including on behalf of third-party Bitcoin ATM owners and a sovereign Central American government who are not parties to this lawsuit, would cease operating; multiple companies, including Athena, would immediately be out of business. *Id.*, at ¶¶4-5. It is well established that a preliminary injunction motion should be denied where there is such disparity in harm to the defendant versus the plaintiff. *See IT Strategies Group, Inc.*, 975 F. Supp. 2d at 1284 (recommending denial of preliminary injunction where threatened injury to plaintiff did not outweigh immense potential damage to defendants).

Notably, in claiming that the threatened injury outweighs any harm to Defendants, AML blatantly misrepresents the relief it is seeking. AML claims that Defendants will not be harmed by being enjoined from "modifying, selling, transferring, or licensing the software". Mot., 20. But AML is not just seeking to prevent Defendants from modifying or distributing the software: it is also seeking to enjoin Defendants from **using** the AML Source Code **or the PSBC Source Code**.

Pl.'s Mot. at 21. In other words, AML is seeking to prevent Defendants from utilizing the software that makes their business run – what AML itself called "the 'guts' of Bitcoin ATMS". Am. Compl., Dkt. #6, ¶28; Ex. A, ¶4 (PSBC Source Code used to run all Bitcoin machines that Athena operates).

AML's alleged investment in developing the AML Software is typical in commercial intellectual property disputes. The relevant inquiry at the preliminary injunction stage is whether AML will suffer irreparable harm absent an injunction, not whether it invested resources previously. AML's own pleadings confirm that the relationship between the parties was originally structured as a licensing arrangement under which AML received substantial payments for use of the AML Software. Am. Compl., ¶¶10, 47, 67. The present dispute concerns whether that licensing relationship continues and whether additional payments are owed. Such disputes are routinely remedied, if appropriate, through monetary damages rather than through the extraordinary remedy of a preliminary injunction. Because AML's alleged injury is compensable through monetary damages there is no irreparable harm.

AML's Motion should be denied because the balance of hardships weigh heavily in favor of Defendants.

### E. AML has not demonstrated that the preliminary injunction would serve the public interest.

AML has not met its burden of showing that a preliminary injunction would serve the public interest. AML claims that an injunction would "prevent[] consumer confusion" in the marketplace, citing *Davidoff & Cie, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1304 (11th Cir. 2001). Mot., 20. That argument is unavailing here. *Davidoff* relates exclusively to trademarks and the infringement thereof and is inapplicable to the facts of this case. *Davidoff & Cie, S.A.,* 263 F.3d 1297. Unlike *Davidoff*, there are no facts presented in this case that any consumers are confused, or even that a consumer would be able to distinguish the source code used in an Athena Bitcoin ATM from a different source code such that confusion would even be possible. AML also argues, without a citation to case law or supporting argument, that the "public has a clear interest in preventing theft of valuable intellectual property and other assets." Pl.'s Mot. at 20. This argument carries no weight and without support, this argument is waived. "Arguments raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed waived." *Schader v. Saul*, No. 19-CV-62805, 2021 WL 1520647, at *13 (S.D. Fla. Feb. 18, 2021), *report and recommendation adopted sub nom. Schader v. Comm'r of Soc. Sec.*, No. 19-62805-CIV, 2021 WL 1084572 (S.D. Fla. Mar. 22, 2021) (citation omitted).

Moreover, public interest encourages the promotion of free competition. *IT Strategies Group, Inc.*, 975 F. Supp. 2d at 1284 (denying preliminary injunction where plaintiff did not demonstrate likelihood of success on infringement claims and public policy favored free competition). Granting the sweeping relief AML requests, requiring Defendants to cease using software systems internal to Bitcoin ATM machines, would risk disrupting this free competition, threatening serious harm to numerous third parties who are not before this Court. Ex. A, ¶¶4-5.

Accordingly, the public interest weighs against granting the requested injunction.

**F.  If a preliminary injunction is granted, AML's galling request for a "minimal" bond should be denied.**

Federal Rule of Civil Procedure 65(c) requires a party seeking a preliminary injunction to post security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined." AML asks the Court to ignore this requirement and instead, impose only a minimal bond. Mot., 20-21. AML argues without support that Defendants would suffer no harm by entry of an injunction – despite asking this Court to prevent Defendants from using the software upon which Athena's business relies. Ex. A, ¶4. Courts in this Circuit have recognized that where an injunction threatens substantial business disruption, a correspondingly substantial bond is required. *See BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 971 (11th Cir. 2005). If the Court were to grant the injunction and subsequently found Athena was wrongfully enjoined from using the PSBC Source Code, the harm to Athena and its business would substantial. In such circumstances, any bond should be equal to the sales that Athena would lose in the year between now and trial. Dkt. #46 (setting jury trial for March 8, 2027); *Larweth v. Magellan Health, Inc.*, 398 F. Supp. 3d 1281, 1293 (M.D. Fla. 2019), *aff'd,* 841 Fed. Appx. 146 (11th Cir. 2021) (rejecting counter-plaintiff's request for a *de minimis* bond and setting bond at $10 million, based on counter-defendant's testimony concerning revenue, where counter-defendant was enjoined from engaging in business until trial); *N. Am. Products Corp. v. Moore*, 196 F. Supp. 2d 1217, 1232 (M.D. Fla. 2002) (setting bond at $500,000, based on defendant's testimony at hearing of sales to customers from whom defendant would be enjoined from serving).

AML has not met its burden as to any of the four required elements for the reasons described above. If the Court were inclined to grant any form of injunctive relief, AML should be required to post a substantial bond following a hearing to substantiate the loss to the Defendants for the disruption of their business operations and business relationships resulting therefrom.

17

## IV.     Conclusion

AML's Motion is not a request to preserve the status quo, but a desperate attempt to obtain its final relief without proving any of its claims. It has not shown a right for such relief. The objective evidence confirms Defendants created the PSBC Source Code pursuant to a valid license, dooming AML's infringement claim. AML's lengthy delay in bringing this action – until after it received most of the payments it was entitled to – combined with its failure to identify any harm other than remote or speculative injuries confirms if will not suffer irreparable injury if the Motion is denied. The remote, speculative harm is far outweighed by the damage threatened to Athena if injunctive relief is granted. Nor has AML provided any support for its claim that the public interest would be served by this injunction. AML's failure to satisfy any one of these elements requires denial of its Motion seeking a preliminary injunction.

WHEREFORE, Athena Bitcoin, Inc. d/b/a Athena Bitcoin Global, PSBC, LLC, Jordan Mirch, Bitom Labs Inc., and Ryan Pineo, respectfully request that this Court enter an order denying AML's request for a preliminary injunction; and for such further relief that the Court deems appropriate and warranted under the circumstances.

*[signature on following page]*

Dated: March 13, 2026

Respectfully submitted,

**Athena Bitcoin, Inc. d/b/a Athena Bitcoin Global, PSBC, LLC, and Jordan Mirch**

/s/ Jordan A. Finfer
Jordan A. Finfer

Saul Ewing LLP
Counsel for Defendants
515 North Flagler Drive, Suite 1400
West Palm Beach, Florida 33401
Telephone:     305-428-4500
steven.appelbaum@saul.com
edelweiss.cianella@saul.com
Wpb-ctdocs@saul.com

Jordan A. Finfer (jfinfer@pfs-law.com)
Illinois ARDC No. 6296373
Elizabeth L. Archerd (earcherd@pfs-law.com)
Illinois ARDC No. 6329394
Patzik, Frank & Samotny Ltd.
200 S. Wacker Drive, Suite 2700
Chicago, IL 60606
312-551-8300
312-551-1101 (Fax)

**Bitom Labs Inc. and Ryan Pineo**

 **LOTT & FISCHER, PL**
/s/ Ury Fischer
Ury Fischer
E-mail: ufischer@lottfischer.com
Florida Bar No. 48534
Noah H. Rashkind
Florida Bar No. 21945
E-mail: nrashkind@lottfischer.com
Ariel Weltz
Florida Bar No. 1033815
E-mail: aweltz@lottfischer.com
255 Aragon Avenue, Third Floor
Coral Gables, FL 33134
Telephone: (305) 448-7089
Facsimile: (305) 446-6191

19